IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SARAH MOLINA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No.:  4:17-CV-2498 AGF |
| | ) |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT ST. CLAIR COUNTY'S MOTION TO DISMISS**

The three Plaintiffs have alleged that they—in two separate locations and as part of two separate incidents—were tear gassed in retaliation for their speech by a group of police officers manning a tactical vehicle; that the group was employed, trained, supervised, and jointly directed by the municipal defendants, St. Louis City and St. Clair County, which were acting in concert after responding to a protest; and that the municipalities' conduct was the moving force that caused the egregious infringements of their clearly established rights. (ECF No. 1, ¶¶ 1–78.)

Plaintiffs have alleged municipal liability against St. Clair County through three avenues—that the violations were the result of an unconstitutional policy, that they were the result of an unconstitutional custom, and that they were the result of a failure to train and supervise. (ECF No. 1, ¶¶ 84–93, 95–104.) *See Corwin v. City of Independence*, 829 F.3d 695, 699–700 (8th Cir. 2016) (holding that municipal liability may arise from any of these). "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2); *see also Whitney v. Guys, Inc.*, 700 F.3d 1118, 1130 (8th Cir. 2012) (applying Rule 8(d)(2) to reverse the dismissal of a claim supported by "minimal pleadings" and

1

"refus[ing] to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*"). Plaintiffs' allegations, and the reasonable inferences that can be drawn therefrom, are sufficient to state a Section 1983 claim against St. Clair County.

I. *Monell* **does not require individual defendants actually be sued, but in any event, Plaintiffs did sue individual defendants.**

St. Clair suggests that it cannot be sued because Plaintiffs have not named any individual defendants. First, this is untrue. A municipality can be held liable under *Monell* even where a plaintiff has sued only the municipality. *Askins v. Doe No. 1*, 727 F.3d 248, 254–55 (2d Cir. 2013) (reversing dismissal of *Monell* claim that had been dismissed on this ground and holding that "a plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality"). The operative question is not whether a plaintiff *has sued* any individual defendant but whether any individual *did* something suable. *Id.*; *see also Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002); *Peterson v. City of Fort Worth*, 588 F.3d 838, 842 (5th Cir. 2009) (both cited by *Askins*).

Second, as St. Clair acknowledges, Plaintiffs did sue individuals: John Doe officers. Though naming fictitious parties is typically discouraged, the Eighth Circuit has endorsed the use of Does in circumstances like these: "an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Estate of Rosenberg ex rel. Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Unless St. Clair is arguing that St. Louis and St. Clair have neither records nor employees that could identify the police officers they had on duty as part of a particular operation, on a particular date, at a particular time, in a particular place, and operating a particular vehicle—all allegations in the complaint, ECF No. 1, ¶¶ 12, 33, 49, 51–57, 61, 69—

2

the John Does can be ascertained easily after reasonable discovery conducted with both municipal defendants. *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) (reversing dismissal of claim against Doe party and holding that "the court should have ordered disclosure of Officer Doe's identity by other defendants named and served or permitted the plaintiff to identify the officer through discovery"); *Berry v. Renaissance Hotel Mgmt., LLC*, 4:09-CV-1261 CAS, 2009 WL 3246874, at *1 (E.D. Mo. Oct. 6, 2009) (holding that slip-and-fall lawsuit against unnamed defendant could proceed where plaintiff alleged defendant was janitor of a particular hotel and was working at a particular time on a particular date).

II.     **Plaintiffs have plausibly alleged a First Amendment retaliation claim premised on the St. Clair County's failure to supervise or train police officers acting under its direction.**

It is of course true that municipal liability attaches under only a few egregious circumstances. However, liability may arise where a municipality's failure to supervise or train its police "amounts to deliberate indifference to the rights of persons with whom the police come into contact" and constitutes the "moving force" behind the constitutional violations. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 583 U.S. at 61; *see also S.M. v. Lincoln Cty.*, --- F.3d ----, 2017 WL 4844981, at *2 (8th Cir. Oct. 27, 2017) (recognizing failure-to-supervise claim under *City of Canton*).

To show that a failure to train or supervise is constitutionally infirm, a plaintiff must prove that the municipality itself acted with deliberate indifference. *Id.* There is no doubt that proving deliberate indifference is challenging, "requiring proof that a municipal actor

3

disregarded a known or obvious consequence of his action." *Id.* But in this context, Plaintiffs have alleged that multiple police officers (who were, inferentially, issued tear gas by the municipal defendants and directed to operate a tactical vehicle capable of deploying that gas) *acted together as a group* to deploy *in two separate locations* chemical munitions against law-abiding people whose speech they disapproved. Taking these allegations as true, the officers' actions violated rights that were clearly established (at the very least) a full year prior. *See Peterson v. Kopp*, 754 F.3d 594, 603–04 (8th Cir. 2014) (reversing summary judgment to police officer where, taking plaintiff's facts, officer deployed a chemical against an arrestee because the arrestee criticized him and asked for his badge number and holding that arrestee's "First Amendment right was clearly established at the time of the incident"); *see also Connick*, 583 U.S. at 61 ("[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."). This gives rise to a reasonable inference that St. Clair County failed to train and supervise the John Doe officers and that its failures were the moving force behind the officers' unconstitutional actions. *Braden*, 588 F.3d at 594 (holding that a complaint is plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (quoting *Iqbal*, 556 U.S. at 677); *see also Twombly*, 550 U.S. at 556 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable").

Moreover, a pattern of violations is not always necessary for a failure to train or supervise claim to prevail. "In [*City of Canton, Ohio v. Harris* 489 U.S. 378], the Court left open the possibility that, in a narrow range of circumstances, a pattern of similar violations might not be

4

necessary to show deliberate indifference." *Connick*, 563 U.S. at 63 (internal quotation marks omitted). The *Canton* Court "posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id.* The Court went on:

> Given the known frequency with which police attempt to arrest fleeing felons and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights, the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the highly predictable consequence, namely, violations of constitutional rights.

*Id.* at 63–64 (internal quotation marks omitted). Thus, "[t]he Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64.

Taking the *Canton* Court's hypothetical but replacing three terms: "firearms" with "chemicals"; "capture fleeing felons" with "patrol anti-police protests"; and "deadly force" with "retaliatory force," and that is precisely the situation alleged here. Plaintiffs have alleged that they were some three blocks away from the site of the initial protest and that they had dispersed some thirty minutes prior. They have alleged that the SWAT vehicle that had fired tear gas on the protest crowd had canvassed the residential area, shot more tear gas "directly at Ms. Vogel, Ms. Molina, and her neighbor and friends, standing on the sidewalk in the neighborhood," and that the John Doe officers knew Ms. Vogel and Ms. Molina had been at the protest site. (*Id.* ¶¶ 56, 57). They have alleged that Mr. Groce was sprayed immediately after he criticized the John Doe officers for trampling the grass in his neighborhood park. (*Id.* ¶¶ 67–71); *see Peterson*, 754 F.3d at 603 (noting that "[t]emporal proximity is relevant" in retaliatory force case). They

5

have alleged that the SWAT vehicle was under the joint direction of the municipal Defendants. (*Id.* ¶ 51.) Based upon the factual allegations and the reasonable inferences that can be drawn from them, Plaintiffs have sufficiently alleged that St. Clair County failed to train and supervise the Officer Does in the tactical vehicle, and that the failure to train and supervise was the moving force behind the deprivation of their First and Fourth Amendment rights. This is enough to rise to the level of plausibility.

Moreover, due to the fact that both St. Clair County and SLMPD officers were present that day, it is plausible that "significant confusion and ignorance regarding who was supervising" the Officer Does is what led to the egregious infringements of Plaintiffs' constitutional rights. *S.M. v. Lincoln Cty.*, --- F.3d ----, 2017 WL 4844981 (8th Cir. Oct. 27, 2017). *S.M.* is instructive on this point. In that case, the Eighth Circuit affirmed, as legally sufficient, evidence to support a jury verdict against a county in a failure-to-supervise case. The plaintiffs, who were drug court participants, had been sexually assaulted by a "tracker" employed to investigate their compliance with drug court conditions. The jury found Lincoln County liable because its policymaker, the sheriff, had failed to supervise the tracker, and the need to do so was "so obvious" that it amounted to deliberate indifference to the rights of the drug court participants. The county made several arguments about its liability on appeal. One of those arguments was that it could not be liable because the drug court was a (somewhat messy) multiagency partnership, and there was insufficient evidence that the county sheriff was even responsible for supervising the tracker. *Id.* at *4. The Eighth Circuit rejected this contention, concluding that the evidence had been sufficient to permit a reasonable jury to conclude that (1) the sheriff had acted with deliberate indifference in failing to provide *any* supervision of the tracker and (2) that his indifference was the "moving force" behind the tracker's assaults even though "plaintiffs failed to identify

6

specific supervisory procedures that should have been instituted." *Id.* at *5. A failure-to-supervise claim may be difficult to prove, but that difficulty is not a basis for dismissing such a claim at the Rule 12(b)(6) stage where Plaintiffs have alleged sufficient facts to put St. Clair County on notice of the basis of its claim.

### III. Plaintiffs have plausibly alleged that St. Clair County has a custom or policy that caused the constitutional violations.

Under *Monell*, local governments may be sued for constitutional deprivations that occurred pursuant to a custom or policy of that local government. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (setting forth policy claim elements); *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (setting forth custom claim elements). Like a failure to supervise or train claim, municipal liability can exist for an unconstitutional custom or policy "where the policymaker has failed to act affirmatively at all, so long as the need to take some action to control the agents of the government 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] . . . can reasonably be said to have been deliberately indifferent to the need.'" *Brown*, 520 U.S. at 418 (quoting *Canton,* 489 U.S. at 390). A "policymaker's toleration of the subordinates' behavior establishes a policy-in-practice" attributable to the municipality and "[s]uch a policy choice may be inferred even without a pattern of acts by subordinate officers, so long as the need for action by the policymaker is so obvious that the failure to act rises to deliberate indifference." *Id.*

Here, taking the allegations as true and drawing all reasonable inferences in favor of Plaintiffs, they have stated a claim that St. Clair County maintains an unconstitutional custom or policy of retaliatory force that caused the deprivation of their rights. Indeed, since we do not

7

know the identity of the Officer Does, we do not yet know whether the County's final policymaker on these issues was among them.

### Conclusion

At the motion to dismiss stage, Plaintiffs need only make allegations for which they have a good-faith belief, and those allegations need only be facially plausible. *See Twombly*, 550 U.S. 569. Plaintiffs are not required to provide evidence to support that good-faith belief in their alleged facts. Plaintiffs have sufficiently pled claims that "raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]." *Id.* at 556. Plaintiffs request that the Court deny Defendant St. Clair County's motion to dismiss. In the alternate, Plaintiffs request leave to amend their complaint.

    Respectfully submitted,

    /s/ Anthony E. Rothert
    ANTHONY E. ROTHERT, #44827MO
    JESSIE STEFFAN, #64861MO
    OMRI E. PRAISS, #41850 MO
    ACLU of Missouri Foundation
    906 Olive Street
    Suite 1130
    St. Louis, Missouri 63101
    Phone: (314) 652-3114
    Fax: (314) 652-3112
    trothert@aclu-mo.org
    jsteffan@aclu-mo.org
    opraiss@aclu-mo.org

        GILLIAN R. WILCOX, #61278MO
        ACLU of Missouri Foundation
        406 W. 34th Street
        Suite 420
        Kansas City, Missouri 64111
        Phone: (816) 470-9938
        gwilcox@aclu-mo.org

        ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically and served by operation of the CM/ECF system on all counsel of record on November 9, 2017.

/s/ Anthony E. Rothert