UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SARAH MOLINA, *et al*. | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 4:17-cv-2498-AGF |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF ST. LOUIS *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

DEFENDANT CITY OF ST. LOUIS'
RESPONSE TO SHOW CAUSE ORDER REGARDING DE-DUPLICATION

COMES NOW Defendant City of St. Louis ("City"), by and through its attorney Julian Bush, City Counselor for the City of St. Louis, and for City's Response to the Court's Show Cause Order (Doc. 94) states as follows:

On December 3, 2018, the Court ordered City to, within 14 days, show cause why de-duplication cannot be accomplished. (Doc. 94). City has diligently worked to comply with the Court's Order and now advises the Court that, with respect to email searches run on the Police Division's servers, de-duplication is possible, though time-consuming when applied to excessively large search results like those generated by Plaintiffs' proposed searches.

For reference, the original hit results for Plaintiffs' searches are below:

Search 1: 696,328 items, 307.14 GB;

Search 2: 1,352, 961 items, 589.76 GB;

Search 3: 1,465 items, 1.37 GB[1];

Search 4: 477,992 items, 222.42 GB.

---

[1] The results of Search 3 are not at issue as City previously screened these emails for privileged material and produced the remaining emails.

On December 3, 2018, Police I.T. advised that it had the ability to de-duplicate email search results, but that the de-duplication process necessarily occurs during the download process. It is therefore not possible to determine how many "hits" there are for a given search after de-duplication without actually downloading the emails from the server, which is time-consuming.

At the direction of the City Counselor's Office, Police I.T. began the de-duplication process on the results of Searches 1, 2, and 4 on December 3, 2018. Given the processing demand, it took the computer four days of continuous processing to de-duplicate the results of Search 1. On December 7, 2018, Police I.T. advised that, following de-duplication, Search 1 resulted in 100,172 items.

Search 2 began de-duplication on December 7, 2018 and given its 1,352,961 items, it took the computer *nine days* of continuous processing to de-duplicate Search 2. On December 17, 2018, Police I.T. advised that, following de-duplication, Search 2 resulted in 230,143 items.

Search 4 began de-duplication today, December 17, 2018, and given its 477,992 items, City anticipates it will take several days of processing to de-duplicate Search 4.

To be clear, while Police I.T. has the ability to de-duplicate email search results, the remainder of the City of St. Louis does not.[2] The City of St. Louis Police Division uses a Microsoft Exchange system and Microsoft Outlook, while most other City of St. Louis agencies use Google Vault and Gmail. The de-duplication tool utilized by the Police Division is inherent to Microsoft Exchange and cannot be utilized by City I.T. for Gmail searches.

Shortly before the Court's December 3, 2018 Order, and at the request of the City Counselor's Office, the Network Systems Manager for the City of St. Louis began working to

---

[2] The majority of Counsel's prior experience with email searches has been with City I.T. and manageable search results from Police I.T. As a result, counsel was not aware until December 3, 2018 that Police I.T. had the ability to de-duplicate email search results.

determine whether City I.T. had the ability to de-duplicate email search results and, if not, to determine the cost and feasibility of obtaining de-duplication software. As of this morning, and following a thorough search, City's Network Systems Manager has not identified any tool currently available to City I.T. that will allow City I.T. to de-duplicate email search results. City's Network Systems Manager has identified one possible solution from a third party vendor, but the cost of that solution is estimated to be approximately $20,000.

As set forth above, together the de-duplicated results of Searches 1 and 2 amount to 330,315 emails. Search 4 is in the process of de-duplicating now, but based on the de-duplication numbers of Searches 1 and 2, may add approximately 100,000 additional emails to that count. The parties have discussed excluding attorney and paralegal emails from these results and from future email searches and have further discussed supplementing the existing protective order and the desirability of an order under Fed. R. Evid. 502(d).[3] Unfortunately, even having taken these steps and those outlined above, Plaintiffs' proposed email searches still yield an unreasonably and monumentally burdensome amount of material.

The 400,000 or more emails that will result from Plaintiffs' searches 1, 2, and 4 will likely include law-enforcement sensitive information. This could include, among other equally sensitive material, the identity of confidential informants or confidential threat assessments conducted by the Police Division or by federal law enforcement agencies. Moreover, even if City were to again engage in the time-consuming process of re-running Plaintiffs' broad searches with

---

[3] With respect to excluding attorney and paralegal emails, City has been diligently working to compile a list of exclusionary search terms by compiling a list of all attorneys and paralegals that have likely communicated with the St. Louis Metropolitan Police Department and with the current City of St. Louis Police Division from 2010 to present. To effectively exclude emails sent to or from these numerous individuals, that list must then be converted to a list of email addresses. Many of these individuals have had multiple email addresses over the years, including email addresses specific to the former SLMPD Legal Division, the St. Louis-Lambert International Airport, and City email addresses utilizing a different domain from prior to 2012 when City began using a Google system. City must also account for employees of the Missouri Attorney General's which previously handled litigation for the SLMPD. City is still working to compile this list of email addresses.

the addition of an extensive list of exclusionary email addresses, privileged work-product material would likely remain. For example, non-legal Police Division employees routinely communicate with one another while working to compile documents requested by the City Counselor's Office through Police Legal, which communications constitute privileged work product. The results could also include communications between Police Division employees and their personal attorneys regarding, for example, workers compensation claims arising from injuries sustained in the line of duty.

From the outset, City has invited Plaintiffs' counsel to work with City to propose reasonable revised search terms and connectors that are calculated to generate relevant material. Plaintiffs have flatly refused and have not deviated from the *first and only* searches Plaintiffs have proposed. City is confident that if Plaintiffs were to communicate in good faith with City in an effort to propose reasonable revised search terms and connectors, that the parties would be successful in resolving this discovery dispute without Court intervention.

For example, Plaintiffs' Search 1 (which yielded the second largest results) includes a number of general terms like "mace" and "pepper spray" which could be included in any number of unrelated police reports and which Plaintiffs' demand be searched for across every Police Division and City of St. Louis email account. Search 2 includes a number of general terms to be searched system-wide like "protest" and "civil disobedience" which could likewise be included in a vast amount of irrelevant material. One possibility which the parties could discuss (were Plaintiffs willing) is combining these two searches in a way which that would require at least one of each of the searches' respective terms to appear together in an email for it to be responsive. Without having been asked to do so by Plaintiffs, City created and ran one such search that resulted in approximately 50,000 hits before de-duplication. While this search still yielded a

4

large and burdensome amount of material, such a combined, calculated search is far more likely to yield relevant emails that, for example, discuss the use of "mace" in the context of a "protest" rather the in an unrelated context. Moreover, given the nature of Plaintiffs' *Monell* claim, the parties should discuss running targeted searches on select supervisory Police Division email accounts (as opposed to system-wide searches like those proposed by Plaintiffs which include, *intra alia*, the email account of every patrol officer). As it has since long before Plaintiffs' Motion to Compel was filed, City remains willing to work in good faith with counsel for Plaintiffs to discuss reasonably calculated searches in an attempt to move electronic discovery forward in this case.

WHEREFORE, and for all the foregoing reasons, City respectfully requests that Plaintiffs' Motion to Compel be denied and for that the Court grant City and such other and further relief the Court deem fair and appropriate.

Respectfully submitted,

JULIAN BUSH,
CITY COUNSELOR

By: /s/ Andrew D. Wheaton
Andrew D. Wheaton   #65269MO
Associate City Counselor
City Hall, Room 314
St. Louis, MO 63103
314.622.4594
FAX: 314.622.4956
wheatona@stlouis-mo.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2018, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system on all counsel of record.

/s/ Andrew D. Wheaton