# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SARAH MOLINA, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No.: 4:17-cv-2498 AGF |
| v. ) | |
| ) | |
| CITY OF ST. LOUIS, MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFFS' REPLY TO MOTION TO COMPEL

Plaintiffs raised three discrete issues in their motion to compel: (1) an inadequacy in Defendant Wethington's response to a request for production; (2) an inadequacy in Defendant Coats' response to a request for production; and (3) baseless objections to a request for production directed to the City of St. Louis. Defense counsel has now adequately supplemented Wethington's response, so that dispute has been resolved.

1.   *Inadequate RFP Response by Defendant Coats*

Defendants' counsel has supplemented Coats' response, but that supplemental production makes it clear there is additional responsive material that has not been produced.[1]

Coats, a SWAT officer, testified during his deposition that he had posted on Facebook a photograph "someone had taken" of him and a colleague "standing on the back of the BEAR" during the protest. Later, he produced a photograph matching that description. Based on

---

[1] For ease of reference, Plaintiffs sent three RFPs to Coats on October 11, deposed him on November 28, and received his RFP responses on December 3. The request at issue sought:
> **All emails, email attachments, text messages, social media posts, documents, recordings, diaries, notes, or other communications in any media format created or retained during the ten-year period prior to August 19, 2015, describing, discussing, or relating to the incidents referenced in the First Amended Complaint.**

Although he had objected generally to the fact that definitions were included in the RFPs, Mr. Coats did not object to the request at issue. He responded: **Please see attached photograph Bates labeled CITY 03375.**

supplemental production sent February 15, it is now clear that he uploaded the photo to a Facebook album rather than sharing or posting something already on the social media site. But as he testified, he did not take the photo; someone else did. The communication in which he received a copy of the photo—whether that be email, text, or direct message—is responsive to the RFP and should have been produced along with the photo. Because his supplementation sheds new light on the nature of his social media post, Coats should be compelled to respond fully to the RFP at issue, including by producing the communication in which he received the photo he uploaded.

2. *Inadequate RFP Response by Defendant City*[2]

Defendant City acknowledges that Critical Incident Reviews (CIRs)[3] conducted after

---

[2] Defendants argue the motion to compel is untimely, either because the motion-to-compel deadline was not modified along with the discovery deadline or because they waited too long to raise their concern.

Plaintiffs had read the Amended Case Management Order to extend the discovery deadline by interlineation, which entails an extension of the motion-to-compel deadline. They did not believe the Court intended to reorder the two deadlines without comment, moving the motion-to-compel deadline from eleven days *after* to nearly three weeks *before* the close of discovery. If Plaintiffs are mistaken, they respectfully submit that their misreading of the scheduling order constitutes excusable neglect and request the Court permit them to file their motion to compel out of time. *See* Fed. R. Civ. P. 6(b)(1)(B); *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010) (holding that "excusable neglect" empowers courts to allow, in appropriate circumstances, late filings caused by "inadvertence, mistake, or carelessness"); *Gibson v. Jensen*, 2017 WL 2982952, at *2 n.1 (D. Neb. July 12, 2017) (finding excusable neglect and good cause and granting arguably untimely motion to compel Rule 35 exam "due to the ambiguity in the scheduling order").

As to delay, Plaintiffs have explained why they did not immediately raise their concern with the inadequate response served January 7. Plaintiffs reasonably believed until the afternoon of January 22 that they were conducting their Rule 30(b)(6) deposition on January 23, a date the parties had agreed upon. They hoped that deposition—and particularly the responses to the RFPs appended to the Rule 30(b)(6) notice—would moot the issue. On Wednesday, January 23, they served their own supplemental production on Defendants after a consented-to one-day extension. On Thursday, January 24, the parties attended mediation. On Tuesday, January 29, shortly after noon, Plaintiffs raised the deficiency with Defendants. The delay, such as it was, was not dilatory. *See Sherrard v. The Boeing Co.*, 4:13CV1015, 2015 WL 5996400, at *4 (E.D. Mo. Oct. 14, 2015) (where scheduling order had required motions to compel to be filed within 15 days of event giving rise thereto, motions to compel were nonetheless timely where the parties had first attempted to "resolve their discovery dispute without judicial intervention" and then motions were filed 8 and 12 days after it had become "clear that they were at an impasse").

[3] Defendants take issue with the conflation of "Critical Incident Reviews" and "documents used in or created for Critical Incident Reviews." To be clear, Plaintiffs do not seek all the firsthand evidence the participants in the review might consider in formulating their evaluation; Plaintiffs seek whatever written media came out of the review process. Plaintiffs have used both phrases because individual defendants in this case sometimes used the word "Review" to describe a *document* and sometimes a *meeting*. Compare, e.g., Book Dep. 56:3-4, Jan. 16, 2019, and Seper Dep. 43:24 (both calling SWAT memo "After Action Review"), *with* Dodge Dep. 84:6-13 (Q: . . . Was there a Critical Incident Review [of what happened on August 19, 2015]? A: I know we got together with some of the

protests are at least "arguably" relevant to Plaintiffs' municipal liability claim. Yet it insists it has no duty to locate CIRs done after protests other than those specifically described in the operative complaint. The City cannot avoid its duty to produce relevant documents by resting on a boilerplate "unduly burdensome" objection when it continues to provide no particulars about what makes the request burdensome. *See, e.g.*, *Near v. Eli Lilly & Co.*, 2008 WL 11334459, at *1 (S.D. Iowa July 16, 2008) ("the party resisting discovery must show specifically how the discovery request is vague, overly broad, burdensome, or seeks information that is not relevant").

The City states for the first time that CIRs are not stored in a "central repository" but continues to provide no information about how they *are* stored. If they are electronic, there would be no need to read every page as the City suggests. *See* ECF No. 92 at 5 n.3. If they are maintained in hard copy, Plaintiffs have already offered to accept blanket Confidential designation, adhere to robust clawback protections, and take on the burden of review. Although the City describes the compilation and review of CIRs as "incredibly difficult," involving "painstakingly searching," and requiring "significant expenditure of time and effort," it does not explain *why*. *See Prime Aid Pharm. Corp. v. Express Scripts, Inc.*, 4:12CV1237, 2017 WL 67526, at *2 (E.D. Mo. Jan. 6, 2017) ("After the proponent of discovery makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing *specific explanations or factual support* as to how each discovery request is improper.") (emphasis added).

In *Prime Aid*, the plaintiff pharmacy alleged that the defendant management company had pretextually terminated a contract between the parties. In discovery, the plaintiff sought "all documents related to terminations" by the defendant that were based on the same allegedly

---

commanders and discussed this, yes. . . . Several of the commanders got together and did kind of a Critical Incident Review of what happened the day before.").

pretextual reason. The defendant objected that the requests were unduly burdensome and not proportional. In opposing the plaintiff's motion to compel, the defendant submitted a sworn declaration that the documents sought were "not the kind of documents [it] maintains in a single centralized database" but were instead maintained separately by their member pharmacies—which numbered more than 70,000. *Id.* at *4. The declarant averred that responding to the RFPs would necessitate manual review of the information regarding each pharmacy, which was maintained in "multiple departments throughout the corporation." *Id.* In granting the motion to compel, the district court commented that:

> The presumption is that the responding party must bear the expense of complying with discovery requests. And, the fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information. A discoveree cannot avoid a proper discovery request by utilizing record keeping which conceals rather than discloses. Here, defendant's argument that plaintiff's requests are burdensome amounts to an assertion that it does not maintain its records in a searchable format. This is not adequate to establish that plaintiff's requests will impose an undue burden.

*Id.* (quoting other cases; internal quotation marks, brackets, and citations omitted). The court also held that the defendant had failed to support its contention that the requests were disproportionate, an issue on which it bore the burden of persuasion, because it did not attempt to address the proportionality factors described in Rule 26(b)(1)). *Id.*

Here, like in *Prime Aid*, the City cannot avoid producing its post-action reviews of protests because it has an unwieldy record keeping system. The City has represented it has no CIR-related documents for any of the specifically dated protests described in the operative complaint. That suggests *either* that the CIR-related records are maintained by date *or* that it may have documents responsive to the requests seeking CIRs that it just cannot find. At the very least,

it seems the City could prepare a list of the dates of all of the protests[4] its officers have patrolled since 2012—which was already one of the topics for the 30(b)(6) deposition, first served on December 24 and not objected to—and search for relevant CIRs that way. Further, unlike the defendant in *Prime Aid*, the City has not supported its opposition with any evidence about the number of documents it would have to review to respond to the RFP at issue. It fails to describe, even generally, whether the fact that the City conducts CIRs "relative to a number of non-protest related incidents" means there are dozens, hundreds, or thousands of nonresponsive CIR-related documents. In short, just like in *Prime Aid*, Defendant City has not carried its burden of demonstrating *why* the RFP is unduly burdensome. Therefore, Plaintiffs request the City be compelled to respond to Request No. 19 of the RFPs.

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
ACLU of Missouri Foundation
906 Olive Street, #1130
St. Louis, Missouri 63108
Telephone: (314) 652-3114
arothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278MO
ACLU of Missouri Foundation
406 West 34th Street, # 420
Kansas City, Missouri 64111
Telephone: (816) 470-9938
gwilcox@alcu-mo.org

**Attorneys for Plaintiffs**

---

[4] Defendants mischaracterize Plaintiffs' municipal-liability claim. There is evidence that—at least when *some* people are on streets or sidewalks protesting police conduct—City police officers cannot or do not always distinguish protestors from non-protestors. *See, e.g.*, *Ahmad v. City of St. Louis*, 2017 WL 5478410, 4:17CV2455, at *4–*5 (E.D. Mo. Nov. 15, 2017) (describing testimony of non-protesters against whom police officers deployed chemical agents). In line with the quoted allegation from the operative complaint, the alleged First Amendment retaliation hinges on the SLMPD officers' *perception* that a person is protesting the police, whether or not that person *is* actually doing so. *See Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1418 (2016).