UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SARAH MOLINA, *et al.* ) | |
| ) | |
| Plaintiffs, ) | Case No. 4:17-cv-2498-AGF |
| ) | |
| v. ) | |
| ) | |
| CITY OF ST. LOUIS *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants City of St. Louis ("City"), Daniel Book, Joseph Busso, Jason Chambers, Lance Coats, Stephen Dodge, Joseph Mader, Michael Mayo, Mark Seper, and William Wethington, by and through their attorney Julian Bush, City Counselor for the City of St. Louis, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby submit this memorandum of law in support of their motion for summary judgment. In support thereof, the following statements are made:

**INTRODUCTION**

Plaintiffs Sarah Molina ("Molina"), Christina Vogel ("Vogel"), and Peter Groce ("Groce") (collectively "Plaintiffs") allege, pursuant to 42 U.S.C. § 1983, that all nine officers they assume were in City's B.E.A.R. Tactical Vehicle ("B.E.A.R.") on August 19, 2015 shot tear gas canisters directly at them in retaliation for their participation in protests. Specifically, Molina and Vogel allege that "[a]pproximately 30 minutes after the police had begun shooting tear gas canisters at protestors at Walton and Page, a B.E.A.R. traveled down Euclid Avenue and shot more tear gas canisters and/or smoke grenades directly at Ms. Vogel, Ms. Molina, and her neighbor and friends, standing on the

1

sidewalk in the neighborhood." (Pl.'s Compl. ¶ 60). Groce alleges that, minutes later, he "encountered the BEAR in [Fountain Park] that Ms. Molina had seen travel down Euclid Avenue," that he "told the officers in the vehicle to get out of the park," and that, in response, "officers in the BEAR shot a tear gas canister and pepper spray directly at him." (Pl.'s Compl. ¶¶ 76-78). Plaintiffs assert a § 1983 First Amendment retaliation claim against all individual defendants (Count I), a § 1983 Fourth Amendment excessive force claim against all individual defendants (Count II), a § 1983 failure to intervene claim against all individual defendants (Count III), and a § 1983 municipal liability claim against City (Count IV).

Defendants are entitled to summary judgment for the following reasons: *First*, Molina and Vogel's allegations are blatantly contradicted by the record and otherwise unsupported; *Second*, Plaintiffs cannot establish that any individual defendant was personally involved in and directly responsible for the alleged specific deployments of chemical munitions at issue in this case; *Third*, Plaintiffs cannot establish that any individual defendant retaliated against any Plaintiff for engaging in protected First Amendment activity; *Fourth,* Plaintiffs cannot establish their failure to protect claim; *Fifth*, Plaintiffs cannot establish their claim for municipal liability; *Sixth*, Molina and Vogel cannot establish that they were actually injured by the alleged deployment South on Euclid; *Seventh*, Plaintiffs unlawfully failed to disperse and any exposure to tear gas was therefore justified; and *Eighth*; the individual defendants are entitled to qualified immunity because their conduct comported with and did not violate clearly established law.

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper if the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether the moving party is entitled to summary judgment, the court must resolve all controversies in favor of the non-moving party and draw all justifiable inferences in favor of that party. *Miners v. Cargill Commc'ns, Inc*., 113 F.3d 820, 823 (8th Cir. 1997). However, the non-moving party bears the burden to show, by affidavit or by "deposition, answers to interrogatories, and admissions on file," that there is genuine issue of fact to be resolved at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Evidence of a disputed factual issue which is merely colorable or not significantly probative will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 248. To meet its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Plaintiffs must now make a showing sufficient to establish the existence of each element essential to their claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**ARGUMENT**

**I.     MOLINA AND VOGEL'S ALLEGATIONS ARE BLATANTLY CONTRADICTED BY THE RECORD AND OTHERWISE UNSUPPORTED.**

3

The United States Supreme Court has held in a case involving video evidence that when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (finding that, in light if the facts depicted by the videotape from the defendant's squad car, it was clear that the defendant officer had not violated the Plaintiff's Fourth Amendment rights).

The Eighth Circuit recently relied upon *Scott v. Harris* in affirming the dismissal of a protestor plaintiff's claim that police assaulted him where the audio recording of the arrest recorded "no sounds indicating anything like the assault [plaintiff] allege[d]." *White v. Jackson*, 865 F.3d 1064, 1077 (8th Cir. 2017) (further holding that "if [plaintiff] had been kicked, struck with a stick, and dragged, there would be some evidence of a scuffle…. Given this video and audio evidence, we need not accept [plaintiff's] version of the facts")

Here, Molina and Vogel's allegation that tear gas canisters were shot directly at them as they stood on the sidewalk 550 feet south of Page on Euclid is contradicted by the DeMian Video, which shows the B.E.A.R. turn south on Euclid and pass Molina's property without *any* sound of tear gas deployment or any other indication that tear gas canisters were deployed as alleged. (UMF ## 49-52).

At 7:27 p.m., and approximately 90 seconds before Molina and Vogel allege multiple tear gas canisters and smoke grenades were shot directly at them, one canister was deployed at the intersection of Bayard and Page and the corresponding loud noise of this deployment is clearly heard on both the DeMian Video and Video 10 recorded by

4

SLMPD Detective Jodie Eaton. (UMF #45).

At 7:28 p.m., the B.E.A.R. turned south onto Euclid and the St. Claire County BearCat Tactical Vehicle ("BearCat") turned North onto Euclid. (UMF #47). As the two vehicles were turning north and south respectively, an officer on the top of the BearCat shot a canister north on Euclid and the loud noise of that deployment is clearly heard on both Video 10 and the DeMian Video. (UMF #48).

Despite the fact that Molina's property at 1221 N. Euclid is only 550 feet south of the intersection of Euclid and Page, as the B.E.A.R turned South on Euclid and proceeded South past Ms. Molina's property, no *further deployments of any munitions are heard on the DeMian Video*. (UMFS ##49-50)[1] Indeed, as DeMian turns South on Euclid and points her camera directly at Molina's property, there are no clouds of smoke or gas that would certainly be visible if the B.E.A.R had, as alleged, "shot more tear gas canisters and/or smoke grenades directly at Ms. Vogel, Ms. Molina, and her neighbor and friends" as they stood in front of Molina's property. (Ex. I, DeMian Video at 7:41-7:55; Dodge Aff., Ex. N, ¶ 13; Ex. X, DeMian Video 2 at 19:58-20:09). In fact, no one on the B.E.A.R. deployed any munitions as the B.E.A.R. traveled South on Euclid past Molina's property. (UMF # 51) (Ex. I, DeMian Video at 7:06-7:53; Ex. J, Groce Dep., p. 114: "Q: Did you see the B.E.A.R deploy any chemical munitions of any kind as it traveled south on Euclid towards Fountain Park? A: … no, I don't—I don't recall seeing that happen.")

---

[1] If canisters had been deployed at this time, DeMian's audio recording would clearly reflect that. During the first deployment of chemical munitions at approximately 7:16 p.m., DeMian recorded the B.E.A.R. deploying canisters at Page and Walton using the same recording device at approximately the same distance, and those deployments are clearly audible on DeMian's recording. (Ex. X, DeMian Video 2 at 19:55-20:25)

5

Molina and Vogel's allegations are blatantly contradicted by the DeMian Video, which shows the B.E.A.R. turn South on Euclid and pass Molina's property without *any* sound of tear gas deployment or any other indication that tear gas canisters were deployed as alleged.

Moreover, even if this Court finds that the Demian Video does not blatantly contradict Molina and Vogel's allegations, their allegations are otherwise unsupported in that there is no admissible evidence sufficient to establish that Defendants "shot… tear gas canisters and/or smoke grenades directly at Ms. Vogel, Ms. Molina, and her neighbor and friends, standing on the sidewalk in the neighborhood." (Pl.'s Compl. ¶ 60). Indeed, Vogel had her back to the B.E.A.R. as it traveled south on Euclid and therefore could not see where the alleged canisters were deployed to. (UMF #54). As such, she cannot testify that canisters or munitions of any kind where shot directly at her as alleged, and there is nothing other than unsupported speculation to conclude that such canisters or munitions were fired at her. While Vogel speculated that the B.E.A.R. fired a canister as it turned south on Euclid, she does not know how far away from her the B.E.A.R. was when it was fired and, regardless, it was not fired at her or towards Molina's house. (Ex. E, Vogel Dep., p. 91).

Likewise, Molina turned her back to the B.E.A.R. as soon she saw it turn south on Euclid and, like Vogel, she cannot testify that canisters or munitions of any kind where shot directly at her as alleged. (UMF #62). Molina did not see the tactical vehicle or any person on it deploy any chemical munitions at all – much less directly at her. (UMF #65). Indeed, with regard to who or what travelled south on Euclid, Molina's lack of personal knowledge is such that she freely admits it "could have been aliens from Mars."

6

On this record, the only plausible conclusion is that, when the B.E.A.R. turned South on Euclid, Molina and Vogel heard a loud pop, turned their backs to the B.E.A.R, and then assumed the officers in the B.E.A.R had fired at them – when in fact what Molina and Vogel heard was an officer on the St. Claire County *Bearcat* firing a canister North on Euclid toward a crowd throwing objects that had gathered there. (UMF # 48). Notwithstanding, given the lack of any evidence in the record sufficient to establish that Defendants shot munitions directly at Vogel or Molina, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

## II. PLAINTIFFS CANNOT ESTABISH THAT ANY INDIVIDUAL DEFENDANT WAS PERSONALLY INVOLVED IN AND DIRECTLY RESPONSIBLE FOR THE ALLEGED SPECIFIC DEPLOYMENTS OF CHEMICAL MUNITIONS AT ISSUE IN THIS CASE.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (holding § 1983 claim not cognizable where plaintiff fails to show defendant was personally involved in and directly responsible for incidents that injured plaintiff).

Here, no Plaintiff can establish that any individual defendant was personally involved in and directly responsible for the alleged deployments of chemical munitions at issue in this case.

Here, Plaintiffs sued every officer they assume was in the B.E.A.R. on August 19, 2015, and generally allege that "the officers aboard the B.E.A.R, shot teargas canisters at them." (Pl.'s Compl. ¶ 64). Now, on summary judgment, Plaintiffs must set forth evidence sufficient to establish that one or more individual defendant officers shot tear gas canisters at them or were otherwise personally involved in those deployments, and

7

they cannot. Neither Molina nor Vogel even saw canisters shot at them and they certainly cannot establish that any individual defendant fired the alleged phantom canisters. (UMF ## 54, 55, 65) (Ex. A, Molina Dep. p. 106, 109, p.112 ("I think when it was shot I had already ducked behind the house…Q: I mean, do you know where it came from? Did you see it come from the vehicle? A:… Well, no…) Indeed, as soon as Molina and Vogel saw a tactical vehicle driving South on Euclid, they both turned and ran. (UMFs ## 54, 62). Neither knows where the alleged canisters came from, neither saw any person (much less a named defendant) deploy the alleged canisters, and Molina went so far as to testify with regard to who or what came south on Euclid that it "could have been aliens from Mars." (UMF #64).

Likewise, Groce has no evidence other than speculation to support a conclusion that he was even shot with a tear gas canister or pepper spray in Fountain Park – much less that it came from any particular individual defendant. Groce has no idea what hit him and he does not know where whatever hit him came from (UMF ##78-79). Groce did not see any person do anything or deploy any canisters at or near the time he believes an unidentified object hit him in his hip. (UMF #80). As such, to the extent anything hit Groce at all, it could have been anything come from anyone – including, for example, an object thrown by a protestor. Groce merely *assumes* the phantom object he believes hit him came from the B.E.A.R., but this kind of unsupported speculation is insufficient on summary judgment, where Plaintiffs must make a showing sufficient to establish the existence of each element essential to their claims and must set forth evidence sufficient to establish each individual defendant's personal involvement in the alleged action. *See Jones v. McNeese*, 746 F.3d 887, 899 (8th Cir. 2014) (holding that admissible evidence is

8

required to defeat summary judgment); *Beaulieu v. Ludeman*, 690 F.3d 1017, 1024 (8th Cir. 2012) (conjecture and speculation are insufficient to defeat summary judgment).

It is well-settled that "[l]iability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." *Wilson v. Northcutt*, 441 F.3d 586, 591-92 (8th Cir. 2006). Here, Plaintiffs have had a full and fair opportunity to conduct discovery regarding each individual defendant's personal conduct on August 19, 2015 in an attempt to establish that one or more fired the alleged canisters South on Euclid or in Fountain Park. Despite that full and fair opportunity, Plaintiffs have failed to adduce any evidence to show that any individual defendant deployed the alleged tear gas canisters South on Euclid or in Fountain Park in a manner that violated Plaintiffs' constitutional rights. Defendants recognize that a § 1983 excessive force plaintiff need not necessarily be able to personally identify her or his assailants to avoid summary judgment, but a § 1983 plaintiff still bears the burden on summary judgment of setting forth evidence sufficient to establish each individual defendant's personal involvement in the alleged action. *White v. Jackson*, 865 F.3d 1064, 1080-81 (8th Cir. 2017) (citing *Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009); *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006). Plaintiffs cannot do so here.

In *White*, the Eighth Circuit reversed the grant of qualified immunity on summary judgment where there was specific evidence that four defendant officers were personally involved in plaintiff's arrest. *White*, 865 F.3d at 1081. There, defendants argued that plaintiff could not personally identify the defendants he alleged beat him in a culvert, but the Eighth Circuit relied upon specific evidence demonstrating the personal involvement of each of the four defendants in plaintiff's arrest. *Id*. Specifically, the record

9

demonstrated that defendants Vinson and Bates physically removed plaintiff from the culvert, defendant Patterson confirmed that he used pepper spray during the arrest, and defendant Payne observed the arrest, yelled at plaintiff to stop resisting, had plaintiff lean against his leg while handcuffed, and helped plaintiff up and brought him to the paramedics. *Id*. The Eighth Circuit held that "[t]his is sufficient evidence to identify Vinson, Bates, Patterson, and Payne as officers who personally participated in Matthews's arrest." *Id*.[2]

Here, unlike *White*, there is no evidence sufficient to establish who deployed the alleged canisters and no evidence sufficient to identify any individual defendant's personal involvement in the alleged tear gas deployments. Moreover, visibility from inside of the B.E.A.R. is extremely limited, so much so that it is impossible to deploy a chemical munition through a porthole while looking out of it. (UMF #82). It is therefore likewise impossible for any other individual sitting in the B.E.A.R. to be personally involved in any given canister deployment by another officer. Simply put, Plaintiffs cannot establish that any individual defendant was personally involved in and directly responsible for the alleged deployments of chemical munitions South on Euclid or in Fountain Park, and summary judgment should therefore be entered in favor of Defendants and against Plaintiffs.

### III. PLAINTIFFS CANNOT ESTABISH THAT ANY INDIVIDUAL DEFENDANT RETALIATED AGAINST PLAINTIFFS FOR ENGAGING IN PROTECTED FIRST AMENDMENT ACTIVITY.

In order to demonstrate retaliation in violation of the First Amendment under 42

---

[2] Notably, the Eighth Circuit affirmed the grant of qualified immunity to defendant officer Derik Jackson where the evidence was that Jackson observed the other defendants pull plaintiff from the culvert and arrest him, but did not personally participate in the arrest. *White*, 865 F.3d at 1081. Here, even if there was evidence that other officers could have seen the alleged deployments, it would be insufficient to show those defendants were personally involved in those alleged deployments.

10

U.S.C. § 1983, each Plaintiff must set forth evidence sufficient to "show (1) [she or he] engaged in a protected activity, (2) the government official took adverse action against [them] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cty. Mo*., 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir.2004). "Retaliation need not have been the sole motive, but it must have been a 'substantial factor' in those decisions." *Kilpatrick v. King,* 499 F.3d 759, 767 (8th Cir. 2007). Here, Plaintiffs cannot establish that any individual defendant retaliated against any Plaintiff for engaging in protected First Amendment activity.

Here, as set forth in Section II above, Plaintiff cannot establish that any individual defendant was personally involved in the alleged deployments. Notwithstanding, none of the individual defendants know Molina, Vogel, or Groce and none would be able to recognize them. (UMF #86). Moreover, Plaintiffs have not adduced any evidence sufficient to establish that any individual defendant recognized or retaliated against them for engaging in protected First Amendment activity. Vogel has no reason to believe that any of the individual defendants knew who she was on August 19, 2015 other than that she assumes the police helicopter could see her and assumes that officers in the helicopter were relaying her location to the officers on the B.E.A.R. (UMF #87). Molina has no reason to believe that any of the individual defendant officers recognized her other than that she assumes the police helicopter saw her and relayed her location to the individual defendants and that that she was "a white person who was in a black neighborhood."

11

(UMF #88). Groce freely admits he has no reason to believe that any of the individual defendants recognized him. (UMF #89).

Molina and Vogel's paranoid speculation regarding what the police helicopter may have relayed to the individual defendants is just that – speculation. There is no evidence to support it and Molina and Vogel cannot establish that any individual defendant recognized them, let alone retaliated against them for engaging in protected activity. With regard to Groce, he freely admits that he has no reason to believe that any individual defendant recognized him. "Bare allegations of retaliatory animus cannot withstand a properly supported motion for summary judgment." *Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012) Here, like in *Green*, Plaintiffs have presented no facts, only "their own unsupported beliefs" to support their allegation that the individual defendants retaliated against them for engaging in protected First Amendment activity. For these reasons, Plaintiffs cannot establish that any individual defendant retaliated against any Plaintiff for engaging in protected First Amendment activity, and summary judgment should be entered in favor of Defendants and against Plaintiffs on their retaliation claim.

### IV. PLAINTIFFS CANNOT ESTABISH THEIR FAILURE TO PROTECT CLAIM.

In an excessive force case, a police officer may be liable for breach of a duty to intervene only "where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration." *Krout v. Goemmer*, 583 F.3d 557, 565.

Here, even if there were sufficient evidence to find that any one officer shot or threw a canister at any Plaintiff without justification (which there is not), visibility from inside the B.E.A.R. is extremely limited – particularly where, as here, officers inside the

12

B.E.A.R. were wearing gas masks and, if they were to deploy munitions through a five inch porthole, they would not have been able to see exactly where they were deploying them to, let alone aim and shoot them at anyone. (UMF ## 82, 83). As such, even assuming Plaintiff's allegations are true, none of the defendant officers inside the B.E.A.R. would have any way to know whether their fellow officer pushing a canister through a porthole was doing so with or without justification. (UMF #83). Not only would other officers not be aware of an unjustified deployment, but the time it would take for a sinister officer to deploy an unjustified canister would be so short in duration that any other officer would not have been aware of the deployment for a sufficient duration of time to support an "inference of tacit collaboration." *Krout*, 583 F.3d at 565. Plaintiffs' failure to intervene claim is unsupported and must fail. For these reasons, summary judgment should be entered in favor of Defendants and against Plaintiffs on their failure to intervene claim.

V. **PLAINTIFFS CANNOT SET FORTH EVIDENCE SUFFICIENT TO ESTABLISH THEIR CLAIM FOR MUNICIPAL LIABILITY.**

Plaintiffs allege that "at the time [they] were gassed and/or sprayed, the City of St. Louis, through SLMPD, had a custom or policy of deploying chemical munitions against protesters, observers of protests, and other pedestrians when the City perceived them to be expressing an anti-law enforcement view and in order to retaliate against them for that perceived view and chill public expression of that perceived view." (Pls. Compl. ¶ 121). Plaintiffs further allege that "[t]he City's customs or policies caused the unreasonable, excessive, and retaliatory use of chemicals against Ms. Molina, Ms. Vogel, and Mr. Groce in violation of their First and Fourth Amendment rights." (Pls. Compl. ¶ 126). Because City's policies are constitutional and because Plaintiffs cannot set forth evidence

sufficient to establish that a widespread custom caused them to be "gassed and/or sprayed," summary judgment should be entered in favor of City and against Plaintiffs.

Where a plaintiff claims that a municipality caused an employee to inflict a constitutional injury, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee. *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 390 (8th Cir. 2007) (citing *Board of Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). This is so because, as the Supreme Court held in *Monell v. Dep't of Social Servs. of the City of New York*, a local government "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, § 1983 liability for a constitutional violation may attach to a municipality only if the violation was caused by (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *Monell*, 436 U.S. at 388.

Here, on August 19, 2015, City had in effect a Use of Force Policy which provided that "Officers will use the least amount of force reasonably necessary to accomplish their lawful objectives while safeguarding their own lives and the lives of others." (UMF #91). The policy further explicitly stated that "chemical agents will not be used for the purpose of frightening or punishing individuals for exercising their constitutional rights." (UMF #94). All SLMPD officers were issued copies of and instructed in the SLMPD Use of Force Policy during their Police Academy training and were further required to review the SLMPD Use of Force Policy and answer questions regarding that policy via the electronic Policy Acknowledgement System every month.

14

(UMF ##90, 92). City also maintained and enforced a patently constitutional policy with regard to the deployment of chemical munitions. (UMF ##94-96). These facts are undisputed, and Plaintiffs' policy claim must fail.

Moreover, Plaintiffs cannot set forth evidence sufficient to establish that a widespread custom of City deploying chemical munitions against those "the City perceived to be expressing an anti-law enforcement view" caused Plaintiffs to be "gassed and/or sprayed" on August 19, 2015. When asked what facts this claim is based on, Vogel testified only that the City is liable under a *respondeat superior* theory because the individual defendants "are the City's officers." (Ex. E, Vogel Dep. p. 128) Groce testified that, aside from the alleged incident in Fountain Park, his "pattern and practice" claim is based solely upon what he has read in the newspaper, which constitutes hearsay and cannot be considered on summary judgment. (Ex. J, Groce Dep. pp. 223-225) (See, e.g, *Pink Supply Corp. v. Hiebert, Inc.,* 788 F.2d 1313, 1319 (8th Cir.1986) (holding that out-of-court statements offered to prove the truth of the matter asserted are inadmissible hearsay and may not be used to defeat a motion for summary judgment)). Similarly, Molina testified that her claim for municipal liability is premised not upon her own personal knowledge, but upon a limited number of videos she has seen on the internet. (Ex. A, Molina Dep., pp. 152-153).

Here, Plaintiffs fall far short of meeting the rigorous standards of culpability and causation that must be applied to ensure that the municipality is not held liable solely for the actions of its employee. *Szabla*, 486 F.3d at 390. Additionally, as set forth above, Plaintiffs cannot establish an underlying constitutional violation by any individual defendant and Plaintiffs' claim for municipal liability fails for that reasons as well. *See*

15

*McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (holding that, as a general rule, municipal liability does not attach without an underlying constitutional violation). For these reasons, summary judgment should be entered in favor of Defendants and against Plaintiffs on Plaintiffs' claim for municipal liability.

### VI. MOLINA AND VOGEL CANNOT ESTABLISH THAT THEY WERE ACTUALLY INJURED BY THE ALLEGED DEPLOYMENT SOUTH ON EUCLID.

No compensatory damages may be awarded for the violation of a constitutional right absent proof of actual injury. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308, (1986) (citing *Carey v. Piphus*, 435 U.S. 247, 264 (1978)) "Instead, nominal damages are the appropriate means 'to vindicate constitutional rights whose deprivation has not caused an actual, provable injury.'" *Corpus v. Bennett*, 430 F.3d 912, 916 (8th Cir. 2005) (quoting *Westcott v. Crinklaw*, 133 F.3d 658, 662 (8th Cir. 1998)). One dollar is recognized as an appropriate value for nominal damages. *Id.* at 916. Here, Molina and Vogel cannot establish that they were actually injured by the alleged deployment South on Euclid and this Court should enter summary judgment limiting any possible recovery at trial by Molina or Vogel to no more than one dollar in nominal damages.

There were already remnants of tear gas in the air before the tactical vehicle drove South on Euclid, and Molina does not remember any additional irritation after the alleged deployment of tear gas South on Euclid. (UMF #66) With regard to Vogel, at the time she alleges she was exposed to tear gas South on Euclid, she had already been exposed to tear gas minutes earlier (which exposure she does not allege was unconstitutional). (UMF #60). At the time of Vogel's alleged exposure to tear gas South on Euclid, her eyes were still watering and her nostrils were still stinging from her exposure to tear gas minutes

16

earlier and Vogel cannot determine which side effects were the result of the first (unchallenged) exposure versus the second. (UMF #61) For these reasons, Molina and Vogel cannot establish that they were actually injured by the alleged deployment South on Euclid and this Court should enter summary judgment limiting any possible recovery at trial by Molina or Vogel to no more than one dollar in nominal damages.

## VII. PLAINTIFFS UNLAWFULLY REFUSED TO DISPERSE AND ANY EXPOSURE TO TEAR GAS WAS THEREFORE JUSTIFIED.

Missouri's "Refusal to disperse" statute provides that "[a] person commits the crime of refusal to disperse if, being present at the scene of an unlawful assembly, or at the scene of a riot, he knowingly fails or refuses to obey the lawful command of a law enforcement officer to depart from the scene of such unlawful assembly or riot." RSMo. § 574.060 An "unlawful assembly" requires that six or more people assemble and agree to violate criminal laws with force or violence. RSMo. § 574.040. "[E]very person who is present and cognizant of the unlawful acts being committed by the other members of the assembly can be found guilty of being unlawfully assembled." *State v. Mast*, 713 S.W.2d 601, 604 (Mo. Ct. App. 1986). Thus, even people who are not themselves committing acts of violence must disperse when ordered to do so. *Abdullah v. Cty. of St. Louis*, 52 F. Supp. 3d 936, 943-44 (E.D. Mo. 2014) (citing *Mast*, 713 S.W.2d. at 604-605).

Here, Vogel and Molina both agree that, between 7:00 p.m. and 7:15 p.m., they were assembled with and standing very near a group of individuals, some of whom were throwing objects at police officers. (UMF #22). Between 7:00 p.m. and 7:15 p.m., Vogel and Molina both knew that multiple objects had been thrown at officers and multiple dispersal orders had been given. (UMF ## 19, 22). Still, neither Molina nor Vogel dispersed. (UMF #27). Instead, they remained with the riotous crowd, which by 7:12 p.m.

17

had moved to the intersection of Bayard and Page. *Id*. At 7:15 p.m., the B.E.A.R. traveled West on Page and deployed tear gas at the intersections of Bayard and Page and Euclid and Page to disperse the riotous crowd, which continued to throw rocks at the B.E.A.R while it was at the intersection of Euclid and Page. (UMF #30).

Plaintiffs unsupported allegations are that they dispersed and that, three blocks away and 30 minutes after the initial deployment, they were unjustifiably tear gassed. In reality, Plaintiffs were 550 feet away from where a violent, riotous crowd had thrown rocks and bricks at the B.E.A.R. 12 minutes earlier. (UMF ## 30, 49). Moreover, Plaintiffs had refused to disperse and were standing with a group of at least six individuals, several of whom (themselves included) had been assembled at Page and Walton minutes earlier when rocks and bricks were thrown at police officers. (UMF #53). Given these undisputed facts, Plaintiffs unlawfully failed to disperse and any exposure to tear gas South on Euclid, even if it had occurred, would have been justified.

### VII. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEIR CONDUCT COMPORTED WITH AND DID NOT VIOLATE CLEARLY ESTABLISHED LAW.

Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 817, 818 (1982). A court required to rule upon qualified immunity of a government official must determine whether the official's conduct violated a constitutional right, and if they have, to determine whether the applicable constitutional standards were clearly established at the time the events took place. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). As the United States Supreme Court announced in *Pearson v.*

18

*Callahan*, a district court has discretion to consider which part of the test to address first. *Pearson*, 129 S. Ct. 808, 818 (2009).

The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he or she confronted. *Saucier*, 533 U.S. at 202. This inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition" and must be "particularized" based on the facts confronting the officer. *Brosseau v. Haugen*, 543 U.S. 194 (2004); *Anderson v. Creighton*, 483 U.S. 635 (1987). In *White v. Pauly*, the United States Supreme Court, noting it had reversed a number of qualified immunity cases in the past five years, recently reiterated the long-standing principle that "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). In *White*, the Supreme Court held that the Tenth Circuit misunderstood the "clearly established" analysis where it relied on general excessive force principles in denying qualified immunity and failed to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. *White*, 137 S. Ct. at 552. Here, the individual defendants are entitled to qualified immunity because their conduct did not violate clearly established law.

As set forth in Sections I-IV above, Plaintiffs cannot set forth evidence sufficient to establish that any individual defendant was personally involved in either of the specific deployments of chemical munitions alleged in this case. Moreover, the video and audio record blatantly contradicts Molina and Vogel's claim entirely. Once qualified immunity is raised, it is the plaintiffs' burden to demonstrate a constitutional standard was clearly

19

established by either setting forth cases of controlling authority in their jurisdiction or by identifying a robust "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 616–17 (1999) Plaintiffs cannot do so here and, as such, the individual defendants are entitled to qualified immunity.

WHEREFORE, for all of the reasons set forth above, Defendants respectfully requests that this honorable Court grant summary judgment in favor of Defendants and against Plaintiffs.

Respectfully submitted,

JULIAN BUSH
CITY COUNSELOR

/s/ Andrew D. Wheaton
Andrew D. Wheaton   #65269 MO
Associate City Counselor
Attorney for Defendants
City Hall, Room 314,
St. Louis, MO  63103
314.622.3361
FAX: 314.622.4956
wheatona@stlouis-mo.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2020, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system.

/s/ Andrew D. Wheaton

20