1 A    The overwhelming majority was compliant.
2 Q    Okay.  And those compliant folks -- did you see any of
3 them get pepper sprayed?
4 A    No, I did not.
5           MR. RELYS:  I have no further questions for this
6 witness at this time.  Thank you.
7           THE COURT:  Cross-examination.
8                        CROSS-EXAMINATION
9 BY MR. ROTHERT:
10 Q    Good afternoon, Mr. Rossomanno.
11 A    Good afternoon, sir.
12 Q    Did you complete a declaration in this case?
13 A    I'm sorry?
14 Q    Did you sign a declaration in this case?
15 A    I did.
16 Q    All right.  And who wrote that for you?
17 A    City Counselors.
18 Q    So I'm correctly understanding that some County police
19 have been operating in the city of St. Louis with respect to
20 protests?
21 A    Yes, sir.
22 Q    Okay.  And is that still the case today?
23 A    No, it's not.
24 Q    Okay.  What time period was that?
25 A    That portion of the detail where the County was assisting

1   us, that ended a week ago Sunday.
2   Q    Do you know who was -- who was in charge of the County
3   police when they were operating in the city?
4   A    Lieutenant Colonel Cox.
5   Q    And is that someone with the County or someone with the
6   City?
7   A    It's a county deputy chief, yes, sir.
8   Q    What's your understanding of, in the city of St. Louis,
9   when you have authority to declare an unlawful assembly?
10  A    Well, first of all, I don't exercise that without
11  direction from an incident commander.
12  Q    Okay.
13  A    But I -- you know, any officer, given the -- depending on
14  the circumstances, can declare an assembly unlawful based on
15  his observations and that particular situation.
16  Q    Okay.  What are the criteria for an unlawful assembly?
17  A    My criteria for an unlawful assembly would be when the
18  group as a whole is acting in an unlawful manner, be it
19  committing acts of violence towards citizens or police
20  officers, property damage, or other violations of law, to even
21  include blocking streets.
22  Q    So even if there's a peaceful protest that's blocking a
23  street, you believe that can be declared an unlawful assembly
24  in St. Louis under St. Louis laws?
25  A    It could be.  It very rarely is.

211

1  Q    And who decides if -- if an assembly becomes unlawful?
2  A    Normally, the incident commander, which depending on some
3  of our, for lack of a better term, run-of-the-mill protests,
4  that can be a district captain, it can be an area major, or
5  for a larger detail like this, it was a lieutenant colonel.
6  Q    But it could be any police officer too?
7  A    It could be, but I would -- you'd be hard-pressed to find
8  an officer that would make that call on their own without
9  seeking guidance from above.
10 Q    Now, can you give a dispersal order if there's not an
11 unlawful assembly?
12 A    Ask that again.
13 Q    Can you give a dispersal order to an assembled group of
14 people if there's not an unlawful assembly?
15 A    Generally no, we don't do that.  I've never done that.
16 Q    Could you?
17 A    You would have to declare it unlawful first and then give
18 an order to -- sure.
19 Q    Okay.  So when you talked about the bicycle police
20 officers on 9th and Olive on September 17th giving dispersal
21 orders, was that -- had that been declared an unlawful
22 assembly by the incident commander?
23 A    I'm sure it'd been declared that by the officers on the
24 scene based on the property damage.  I would assume.  You'd
25 have to ask them.

```
 1   Q     So it's not always the incident commander.  Sometimes
 2   it's just the officers --
 3   A     Not always.
 4   Q     -- on the scene?
 5   A     Correct.
 6   Q     Also, that evening or that day, September 17th, you
 7   shadowed a march for quite some time in streets in St. Louis;
 8   correct?
 9   A     17th -- was that Sunday?
10   Q     Yes.
11   A     Yes, yes, I did.  I'm sorry.
12   Q     All right.  Is it your belief that you could have
13   arrested any of the people at any time who were participating
14   in that march?
15   A     It's my belief that blocking the streets is against the
16   city ordinance.
17   Q     Okay.  So do you believe that under the city ordinances
18   you had authority to arrest any of those people at any time?
19   A     If we wanted to, we could have effected arrests after,
20   you know, going through the proper procedures of telling them
21   that their activity is unlawful and they need to leave the
22   streets.
23   Q     Well, do you really?  Do you really have to tell someone
24   that they're -- if they're violating the law about blocking
25   streets, do you have to tell them that it's unlawful and --
```

```
 1  A    You'd be surprised how many times we've had to explain to
 2  them that blocking the streets is unlawful.
 3  Q    Okay.  Before you can do an arrest, do you have to
 4  declare the assembly unlawful and order them to leave if
 5  they're blocking the streets, or can you just arrest?
 6  A    Oh, not necessarily.  If you have somebody -- for
 7  example, you see a subject throw a rock at a police officer;
 8  you don't have to give him an order to disperse before you
 9  arrest him.  He's wanted for a charge at that point.
10  Q    But what about blocking traffic by marching in the
11  street?
12  A    Do you have to give them?
13  Q    Right.
14  A    No, you don't, but we do.  Of the 200 protests I've
15  worked, 90 percent of them, we've allowed them to march in the
16  streets, and we do nothing but block traffic for them.
17  Q    Okay.  And how do you decide when you're going to --
18  A    That's not my decision.
19  Q    Okay.  Whose decision is it?
20  A    The incident commander normally.
21  Q    All right.  And is that just in his discretion?
22  A    You'd have to ask the incident commander.
23  Q    Okay.  And who is the incident commander?
24  A    For this, for these details, for the Stockley verdict, it
25  was Lieutenant Colonel Leyshock, but as I said, day-to-day,
```

1   the incident commander can change depending on where the
2   protest is and who is the district captain.
3   Q    All right.  If there are protests in the downtown area,
4   marching down Market during the day, do you know who the
5   incident commander is?
6   A    Captain Renee Kriesmann would be the incident commander.
7         THE COURT:  What was the name you said?
8         THE WITNESS:  Kriesmann, ma'am.  It's
9   K-R-I-E-S-M-A-N-N.
10  Q    (By Mr. Rothert) Now I want to ask you a couple questions
11  about dispersal orders.
12  A    Okay.
13  Q    Do you think it's reasonable that people might think that
14  when you give a dispersal order to a group of protestors that
15  you're ordering the protest to disperse and not people who
16  aren't involved in the protest?
17  A    I'm sorry.  I'm trying to -- because I can't really hear
18  you very good.  I apologize.  My hearing is -- I'm trying to
19  read it as you're --
20  Q    That's fine.  If -- when you give a dispersal order to a
21  group of protestors, do you think it's reasonable for people
22  who are not part of that assembly to think that that dispersal
23  order does not apply to them?
24  A    I think a reasonable person would order or would follow
25  the orders being given to them by police, whether they're