# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SARAH MOLINA, *et al.*, | ) |
| Plaintiffs, | ) Case No. 4:17-cv-2498-AGF |
| v. | ) |
| CITY OF ST. LOUIS *et al.*, | ) |
| Defendants. | ) |

## DEFENDANTS' REPLY
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants City of St. Louis ("City"), Daniel Book, Joseph Busso, Lance Coats, Stephen Dodge, Joseph Mader, Michael Mayo, Mark Seper, and William Wethington, by and through their attorney Julian Bush, City Counselor for the City of St. Louis, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, and for their reply in support of their motion for summary judgment state as follows:

Now that qualified immunity has been raised, it is Plaintiffs' burden to "demonstrate that [their] right to be free from the particular use of force was clearly established at the time of the incident." *Shelton v. Stevens*, No. 18-3379, 2020 U.S. App. LEXIS 21274, at *11 (8th Cir. July 9, 2020). As the Eighth Circuit recently reiterated, "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Id*. at *11-12 (8th Cir. July 9, 2020) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153, (2018)). And, as the Supreme Court recently reiterated, "[s]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an

1

officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152-53 (2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015)).

Here, Plaintiffs fail to meet their burden to demonstrate any clearly established constitutional right to be free from any individual defendants' alleged particular use of force because they fail to identify controlling precedent that "squarely governs the specific facts at issue" in this case. *Id*. at 1153. At the time Molina and Vogel allege they were unconstitutionally exposed to tear gas, they were just 550 feet away from where a violent, riotous crowd had thrown rocks and bricks at largely unprotected police officers just 12 minutes earlier. (UMF ## 30, 49).[1] It is undisputed that, just 12 minutes earlier, Molina and Vogel were assembled that riotous crowd, some of whom were throwing bricks and rocks at police officers, and refused to comply with multiple orders to disperse. (UMF #22, 53) Then, Molina and Vogel did not disassociate with the crowd and moved west with the crowd, which continued to throw rocks at the B.E.A.R. and the officers in it while it was at the intersection of Euclid and Page (UMF #30). Minutes later and just 550 feet away from where bricks and rocks were last thrown, Molina and Vogel remained assembled with a group of at least six individuals, several of whom had also just been assembled with the riotous crowd. (UMF #53). While, at the same time, a group just on the other side of Page and Euclid continued to throw rocks at the St. Claire County Bearcat. (UMF #48).

---

[1] Plaintiffs' Response repeatedly cites and relies upon the After-Action Report drafted by non-party Officer Nicholas Manasco following this incident. Pursuant to Rule 56(c)(2), the After-Action Report is inadmissible hearsay and cannot be presented in a form that would be admissible in evidence and cannot be relied upon to defeat summary judgment. *See Glaze v. Byrd*, 721 F.3d 528, 532 (8th Cir. 2013) (reversing the denial of qualified immunity to a correctional officer where, as a matter of law, the hearsay relied on by the district court was not admissible). Indeed, Plaintiffs themselves criticize the After-Action Report as unreliable in that it "was drafted by someone who was not present on the BEAR…" (Doc. 185 at 5, fn. 2).

2

On these facts a reasonable officer could have, even if mistaken, believed that that the deployment of tear gas to disperse the group Molina and Vogel were with (which exceeded six persons) was constitutional. Again, Plaintiffs bear the burden of "setting forth existing precedent that squarely governs the specific facts at issue" that clearly established the constitutional right at issue as of August 19, 2015, but fail to do so here. Indeed, none of the cases cited by Plaintiff involve the deployment of tear gas at all, let alone the deployment of tear gas minutes after rocks and bricks were thrown at police officers.

Plaintiffs rely upon *Burnikel v. Fong*, 886 F.3d 706 (8th Cir. 2018), but that case is factually distinct and could not have put the individual defendants on notice that their conduct here violated clearly established law. In *Burnikel*, Plaintiff Dustin Burnikel ("Burnikel") saw a defendant police officer attempting to arrest someone. *Id*. at 708. Without realizing the defendant was a police officer, Burnikel approached and said "what are you doing to her"? The officer, without identifying himself, then immediately deployed pepper spray in Burnikel's face and proceeded to beat Burnikel, who did not resist, by repeatedly punching him in the face, sides, stomach, mid-section, and testicles until he fell to the ground. *Id*. Another officer joined in the beating, and Burnikel suffered broken teeth, severe bruising, and injuries to his face, back, ribs, legs, and testicles. *Id*. at 709. The Eighth Circuit held that, on these facts, a reasonable officer would have understood the amount of force used was excessive. *Id*. at 712. Notably, Burnikel did not argue, and the Eighth Circuit did not consider, whether the initial use of pepper spray violated clearly established law. *Id*. at 712. n.4.

Plaintiffs also rely on *Brown v. City of Golden Valley*, 574 F.3d 491 (8th Cir.

3

2009), where an officer was denied qualified immunity after tasing a passenger during a traffic stop who did not resist, posed no danger to the officers or the public, sat in the car after having been pulled over, and had done nothing more than call 911. *Id*. at 500. After assessing a number of factually distinct cases where the use of pepper spray was found constitutional, the Eighth circuit held that "at the time [the officer] deployed his Taser and arrested [the appellee], the law was sufficiently clear to inform a reasonable officer that it was unlawful to Taser a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator." *Id*. at 499.

Plaintiffs then rely on *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011), where defendant officers were alleged to have kicked the plaintiff repeatedly in the sides while he was restrained the ground offering no resistance, one officer choked and kicked the plaintiff during his trip to the hospital, and another officer intentionally drove erratically so that the plaintiff's head was jerked back and forth, causing injury. *Chambers v. Pennycook*, 641 F.3d 898, 907-08 (8th Cir. 2011).

Next, Plaintiffs rely on *Treats v. Morgan*, 308 F.3d 868 (8th Cir. 2002), where correctional officers were denied qualified immunity after pepper spraying an inmate in the face without warning and tackling him to the ground where the inmate had done nothing more than turn towards the officer after a peaceful conversation about signing a form. On these facts, the Eighth Circuit held that the inmate "presented sufficient evidence for a reasonable jury to conclude that [the correctional officers] acted maliciously with the intent to cause injury when [one officer] sprayed him with capstun

4

pepper spray without warning and [the other officer] threw him down. *Id*. at 868, 874.

Finally, Plaintiffs rely on *Lawrence v. Bowersox*, 297 F.3d 727 (8th Cir. 2002), where defendant correctional officers used a racial epithet to order an inmate confined in his cell to "get naked" for a search. *Id*. at 727. When the inmate responded by asking "what did you say?", correctional officers soaked the inmate and the entire interior of the inmate's cell with an MK-46 pepper spray launcher that resembled a fire extinguisher, left the inmate to soak in and inhale the pepper spray for 10 minutes in the cell, and subjected the inmates to resultant days of intense skin burning. *Id*. at 730.

Suffice it to say, a reasonable officer would miss any similarity between *Burnikel*, *Brown*, *Chambers*, *Treats*, *Lawrence*, and the facts in this case – were the officers are not alleged to have ruthlessly beaten a bystander to an arrest, are not alleged to have tased a passenger who did nothing more than call 911, are not alleged to have kicked and choked a restrained suspect, are not alleged to have pepper sprayed and tackled an inmate during a peaceful, routine conversation in a secure facility, and are not alleged to have used an MK-46 to soak a compliant inmate and their cell and leave the inmate in their cell for 10 minutes, causing their skin to burn for days. *See Kisela*, 138 S. Ct. at 1154 (holding that "[s]uffice it to say, a reasonable police officer could miss the connection between the situation confronting [the officer in a factually different case] and the situation confronting [the officer in *Kisela*].") Aside from all being factually distinct, none of the cases relied upon by Plaintiffs even involved protests, none involve tear gas, and none involve riotous groups throwing bricks and rocks at police officers on public streets. It is difficult to imagine how any of these cases could possible have put the individual defendant officers on notice that they violated clearly established constitutional rights in deploying tear gas near a still assembled group just minutes after and feet away from

5

where and when bricks and rocks were thrown at officers – particularly when multiple warnings regarding the use of chemical munitions had been issued. Plaintiffs assertion that the cases they cite "are instructive" is only true in that they set forth general principles of law. But, Plaintiffs cannot rely only upon general principles of law to defeat qualified immunity, "[o]therwise '[p]laintiffs would be able to convert the rule of qualified immunity… into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U. S. 635, 639 (1987)).  Regardless, Plaintiffs fail to meet their burden to demonstrate any clearly established constitutional right to be free from any individual defendants' alleged particular use of force because they fail to identify controlling precedent that "squarely governs the specific facts at issue" in this case. *Kisela*, 138 S. Ct. at 1153 (2018) (quoting *Mullenix*, 136 S. Ct. 305).

Plaintiffs failure to identify controlling precedent that "squarely governs the specific facts at issue" in this case is itself dispositive and mandates summary judgment in favor of the individual defendants on qualified immunity grounds. Notwithstanding Plaintiffs' failure to identify controlling precedent sufficient to put the individual defendants on notice that their alleged conduct violated clearly established law, existing law would have put the individual defendants on notice that they *are* entitled to qualified immunity.

In *Bernini v. City of St. Paul*, 665 F.3d 997 (8th Cir. 2012), Police in St. Paul, Minnesota closed the downtown area as a result of property damage throughout the city during the Republican National Convention. *Bernini v. City of St. Paul*, 665 F.3d 997, 1001 (8th Cir. 2012). Then, a group of approximately 100 protestors gathered at an

intersection in an apparent attempt to access downtown. *Id*. About 15 protestors began to advance towards police, while officers instructed "back up, back up" and deployed stinger blast balls towards the crowd. *Id*. The small group retreated to the larger one, at which time officers reported that numerous objects, including rocks, were propelled at them. *Id*. Plaintiffs denied seeing anyone throw objects at the officers. *Id*.

The group began to move West and, as it did, the group grew to hundreds of people. *Id*. As the group moved west, "[t]he police continued to use non-lethal munitions, including smoke, blast balls, and chemical irritants, in an apparent effort to keep the crowd moving west." *Id*. at 1002. Ultimately, police encircled the group at a park and conducted a mass arrest of approximately 160 people. *Id*. at 1002. Thirty-two people (including legal observers and protestors) who were present along the road as the police deployed chemical munitions filed suit pursuant to 42 U.S.C. § 1983 against the City of St. Paul and the five appellee police officers in their individual capacities, alleging, among other things, excessive force premised upon the deployment of chemical munitions as the group moved west. *Id*.

On appeal, the plaintiffs exposed to chemical munitions argued that "it was unreasonable for the officers to continue to use [chemical munitions] as the crowd moved west on Shepard Road, because the crowd was "complying with the movement of the officers and posed no threat to the officers." *Id*. at 1006. The Eighth Circuit disagreed, and held with regard to the deployment of munitions as the crowd moved west, that, on these facts, "it was not objectively unreasonable for [defendant police supervisor] to authorize the force deployed in light of clearly established law." *Id*. The Court further held that "the use and authorization to use non-lethal munitions to direct the crowd away

7

from the intersection and toward a park where the crowd could be controlled did not violate clearly established rights." *Id*. Recognizing the dilemma faced by officers responsible for reacting to group activity, the Court held that the Fourth Amendment "is satisfied if the officers have grounds to believe all arrested persons were a part of the *unit* observed violating the law." *Id*. at 1003 (quoting *Carr v. District of Columbia*, 587 F.3d 401, 408 (D.C. Cir. 2009) (emphasis in original)). Thus, all of the defendant officers were entitled to qualified immunity. *Id*.

With regard to the identification and personal liability of the individual defendant officers present throughout the deployments, the Eighth Circuit held that "[t]he record does not show that any of the defendants directly used force against any of the plaintiffs," and went on to hold:

> The plaintiffs have not identified any defendant who used gratuitous force. The evidence, therefore, does not support the conclusion that [the police supervisor] or any other defendant violated clearly established rights under the Fourth Amendment. The district court properly granted summary judgment on this claim.

*Id*. Here, *Bernini* is more similar than any case cited by Plaintiffs, and it demonstrates that the individual defendants are entitled to qualified immunity. Like *Bernini*, this case involves a crowd, which Plaintiffs were assembled with, throwing rocks and objects at police officers. Like *Bernini*, police in this case moved the crowd west by deploying chemical munitions. Like *Bernini*, the Plaintiffs in this case argue it was unreasonable for officers to deploy chemical munitions after they had already moved west and "posed no threat" to the officers. Like *Bernini*, even though the individual defendants were present and some deployed chemical munitions at various times that day, Plaintiffs cannot identify any individual officer that used gratuitous force against

8

them. Thus, like *Bernini*, the individual defendants in this case are entitled to qualified immunity,

More recent decisions likewise demonstrate the individual defendants' entitlement to qualified immunity. In *Burbridge v. City of St. Louis*, 430 F. Supp. 3d 595 (E.D. Mo. 2019), this Court recently considered analogous claims of excessive force involving the use of pepper spray by unidentified police officers on September 17, 2017. In that case, Plaintiff Jennifer Burbridge alleged she was unlawfully subjected to pepper spray by police officers, including Sgt. Brian Rossomano, during her arrest at the intersection of Tucker and Washington in the City of St. Louis. *Id*. at 616. It was undisputed that Sgt. Rossomano deployed pepper spray at that intersection during plaintiff's arrest. *Id*. at 612. Yet, because Plaintiffs could not establish that it was Sgt. Rossomano who deployed the pepper spray that affected Plaintiff Jennifer Burbridge, this Court granted summary judgment in favor of Sgt. Rossomano on Jennifer's excessive force and retaliation claims. *Id*. at 613.

The Court in *Burbridge* further noted that summary judgment in favor of the defendants was appropriate because the pepper spray at issue was not directed at Jennifer and affected her only by proximity. *Id*. at 612. Thus, the harm Jennifer suffered from the pepper spray was only "negligently inflicted harm," which is categorically insufficient to support a § 1983 excessive force claim. *Id*. at 613 (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1105 (8th Cir. 2004) (holding that pepper spray may be used to effectuate arrest even if it is "foreseeable" non-offending parties may be affected)).

Here, like in *Burbridge*, Plaintiffs cannot establish that any individual defendant

9

deployed the alleged munitions at issue.[2] Moreover, like in *Burbridge*, Plaintiffs cannot establish that any of the alleged munitions deployed were directed at them. Molina testified that she believes chemical munitions flew past her and between two houses on Euclid towards an alley to the west. (Ex. A, Molina Dep. pp. 104-105) Molina did not see it land and does not know how far away it landed. (Ex. A, Molina Dep. pp. 113-114) With regard to that alleged deployment, Vogel testified testified explicitly that canisters were deployed towards others:

> I saw the B.E.A.R. turning onto Euclid and there were a few -- there were a few people outside of --outside of their houses on the sidewalk and gas was projected *towards them*…

(Ex. B, Vogel Dep., p. 82) (emphasis added). And, of course, Groce testified that he did not see any person do anything or deploy any canisters at or near the time the object hit him in his hip. (UMF #80). On this record, like in *Burbridge*, Plaintiffs cannot establish that any of the alleged deployment *were directed at them*. Therefore, like in *Burbridge*, Plaintiffs' excessive force and retaliation claims fail.

With regard to Groce's claim that an object hit him as he approached the B.E.A.R, even if this Court finds sufficient evidence to make a submissible claim against any officer, a reasonable officer could have believed that, when an irritated Groce approached a stationary tactical vehicle just minutes after it and officers had had rocks and bricks thrown at them by a riotous crowd and told the vehicle to leave, Groce posed a threat to officer safety and non-lethal force was justified to address that threat. All of the officers stationed inside of the B.E.A.R had limited visibility and were tactically vulnerable in the

---

[2] Plaintiffs rely on *White v. Jackson*, 865 F.3d 1064, 1080-81 (8th Cir. 2017) for their unsupported contention that there is sufficient evidence to establish that one or more of the individual defendants deployed the munitions at issue. For the reasons set forth in Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, *White* is distinguishable in that there was testimony from each defendant office that they personally participated in the arrest at issue. Not so here.

10

event anyone were to get close enough to the B.E.A.R. to put a dangerous object, such a Molotov cocktail, through one of the portholes. (Ex. B, Wethington Dep., p. 54-55). In fact, when asked whether he could understand that it is not a good idea to approach a tactical vehicle with its police lights on after it had been engaged in a tense situation minutes earlier, Groce responded that he has a sense of fearlessness that causes him to approach situations others would not. (Ex. J, Gorce Dep. at 220-221). On these facts, Eighth Circuit law demonstrates that the deployment of non-lethal munitions against Groce, even if it occurred, would have been justified. *See White v. Jackson*, 865 F.3d 1064, 1079-80 (8th Cir. 2017) (holding that a reasonable officer could have concluded that an individual approaching a police skirmish line had been part of a violent crowd and that his advance towards officers posed a threat to officer safety – justifying the use of non-lethal rubber bullets). Here, while Groce may not have been previously assembled with the violent crowd, the officer had no way of knowing that, and a reasonable officer could have reasonably inferred that he had been given his behavior. Thus, even if a use of non-lethal munitions against Groce occurred, the deploying officer is entitled to qualified immunity.

With regard to Plaintiffs' failure to intervene claims, they likewise fail. In the Eighth Circuit, a failure to intervene to claim requires proof that "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Robinson v. Payton*, 791 F.3d 824, 829 (8th Cir. 2015).

Here, Plaintiffs ignore that, even if one officer in or on top of the B.E.A.R. had used excessive force by launching a chemical munition, the others would have had no

11

way of seeing who it was launched towards or why, and would have had no opportunity or means to prevent the deployment before it occurred. Visibility from inside the B.E.A.R. is extremely limited and Officers inside of the B.E.A.R. could not tell where they were, could not see what any other was doing because their backs were to each other, and could not see what another officer was firing at outside of the vehicle because the portholes were so small. (UMF's ##82-85). Even setting all of that aside, there is no evidence that any officer inside of or on top of the B.E.A.R. indicated their intention, verbally or otherwise, to unconstitutionally deploy chemical munitions in advance of doing so. Thus, no individual defendant would have had the opportunity or the means to prevent the alleged offending officer from pulling the trigger or pin in advance of them doing so. Therefore, because the individual defendants would have had no opportunity or means to prevent the alleged deployments before they occurred, Plaintiffs' failure to intervene claims necessarily fail. *Robinson*, 791 F.3d at 829.

With regard to Plaintiffs' § 1983 municipal liability claim against City (Count IV), it likewise fails. As an initial matter, Plaintiffs rely upon depositions, declarations, and testimony excerpts from other cases, which counsel for Defendants was not present for and never agreed could be used in this matter. For this reason and the reasons set forth in Defendants' corresponding Motion to Strike, Docs. 183-7, 8, 11, 15, and 25 should be excluded, stricken, and not considered by the Court.

Even if this Court were to consider these inadmissible depositions, declarations, and testimony excerpts from other cases, they still would not establish a claim for municipal liability here. In total, Plaintiffs point to six incidents that occurred before

August 19, 2015 in an attempt to support their claim for municipal liability.³ These include two alleged incidents on unidentified days in October of 2014 where tear gas was deployed (Doc. 183-10), an incident on November 24, 2014 where tear gas was deployed (Doc. 183-16), an incident on November 25, 2014 where individuals that walked up an interstate off ramp and sat down to block an interstate lane were pepper sprayed (Doc. 183-11), an incident on December 31, 2014 where pepper spray was deployed under unidentified circumstances (Doc. 183-12; Doc. 183-14), and an incident on May 19, 2015 where Keith Rose was pepper-sprayed outside of the Mayor's house. Now, to defeat summary judgment, Plaintiffs must establish that the alleged deployments at issue in this case were *directly caused by* City's deliberate indifference to an unofficial custom so persistent and widespread as to have the "force of law." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). This, Plaintiffs cannot do.

Plaintiffs do nothing to establish that these six incidents involving tear gas or pepper spray were in fact incidents where excessive force was used because Plaintiffs do little to nothing to establish the circumstances underlying each use of force. Notwithstanding, five incidents involving different circumstances over the short course of two months and one additional incident where one person was subjected to pepper spray are not sufficient to establish an unofficial custom so persistent and widespread as to have the "force of law." *Id.*; see also *Burbridge*, 430 F. Supp. 3d at 620 (holding that "many" incidents are required to establish municipal liability and finding that prior incidents "must have occurred for so long or so frequently that the course of conduct warrants the

---

³ Because the relevant inquiry is whether deliberate indifference to a widespread custom *directly caused* a subsequent constitutional violation, and because incidents occurring *after* the alleged constitutional violations at issue in this case could not possibly have caused them, Plaintiffs' assertions regarding incidents that occurred after August 19, 2015 are irrelevant and immaterial and should not be considered.

13

attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [the municipality's] employees") (quoting *Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)). Neither can Plaintiffs establish that any individual defendant deployed chemical munitions in this case *because* of these prior six incidents.

And, setting aside all of this, Plaintiffs cannot establish that City was deliberately indifferent to these incidents because, as Plaintiffs themselves present evidence of, before August 19, 2015, City acted to better police protests incidents by conducting specific training regarding policing protests and using chemical munitions in a constitutional manner (See Doc. 183-26 at 56, 65, Dep. of Major Eric Larsen), voluntarily entering into a Settlement Agreement restricting the use of chemical munitions (See Doc. 183-26 at 23; Ex. Z, Templeton Settlement Agreement), and enacting and distributing a policy following these six incidents and before August 19, 2015 that explicitly stated that "chemical agents will not be used for the purpose of frightening or punishing individuals for exercising their constitutional rights" and which further restricted the use of chemical munitions. (UMF #94). These actions by City are the antithesis of deliberate indifference by City in that they demonstrate affirmative action by City to prevent constitutional violations by individual officers with respect to the use of chemical munitions. As such, Plaintiffs' claim for municipal liability must fail.

Finally, Plaintiffs' assertions regarding City's "framework for permits" and arguments regarding enforcement of City's impeding the flow of traffic ordinance are, besides being unpersuasive, immaterial – because it is uncontroverted that Plaintiffs were assembled with a group that was engaged in acts of violence by throwing rocks, bricks,

14

and objects at police officers. This is unlawful. *See* RSMo. § 574.040; *State v. Mast*, 713 S.W.2d 601, 604 (Mo. Ct. App. 1986) (holding that "[e]very person who is present and cognizant of the unlawful acts being committed by the other members of the assembly can be found guilty of being unlawfully assembled").[4]

For all the reasons set forth in Defendants' Motion for Summary Judgment and above, this Court should grant summary judgment in favor of Defendants and against Plaintiffs on all counts.

WHEREFORE, for all of the reasons set forth above, Defendants respectfully requests that this honorable Court grant summary judgment in favor of Defendants and against Plaintiffs.

        Respectfully submitted,

        JULIAN BUSH
        CITY COUNSELOR

        /s/ Andrew D. Wheaton
        Andrew D. Wheaton   #65269 MO
        Associate City Counselor
        City Hall, Room 314,
        St. Louis, MO  63103
        314.622.3361
        wheatona@stlouis-mo.gov

---

[4] In addition, it is unlawful in the City of St. Louis to congregate for the purpose of breaking the law or to refuse a police officer's lawful order to disperse. St. Louis City Ordinance 15.52.010. This Court has recognized that it may take judicial notice of local ordinances. *A.L.L. Constr., LLC v. Metro. St. Louis Sewer Dist.*, No. 4:17-cv-02367-AGF, 2018 U.S. Dist. LEXIS 58070, at *13 n.6 (E.D. Mo. Apr. 5, 2018) (citing *Weed v. Jenkins*, 873 F.3d 1023, 1028 (8th Cir. 2017) (holding that "matters of public record such as state statutes, city charters, and city ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice.")).

## **CERTIFICATE OF SERVICE**

  I hereby certify that on September 3, 2020, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system.

                /s/ Andrew D. Wheaton