**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

SARAH MOLINA, et al.,                )
                                     )
            Plaintiffs,              )
                                     )
      v.                             )        Case No.  4:17-CV-2498-AGF
                                     )
CITY OF ST. LOUIS, MISSOURI,         )
et al.,                              )
                                     )
            Defendants.              )

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Defendant City of St. Louis's ("the City")

motion for summary judgment in this civil rights case brought under 42 U.S.C. § 1983

and arising out of police officers' dispersal of tear gas against Plaintiffs at the scene of a

protest.  ECF No. 238.  Plaintiffs are St. Louis area residents Sarah Molina, Christina

Vogel, and Peter Groce.  Defendants are the City and several officers of the St. Louis

Metropolitan Police Department ("SLMPD").[1]  In a decision on interlocutory appeal

challenging this Court's denial of qualified immunity on Plaintiffs' First Amendment

claims against the individual defendants, the Eighth Circuit Court of Appeals affirmed

the denial of qualified immunity on Plaintiff Groce's First Amendment claim against

the individual officers in a Ballistic Engineered Armored Response Counter Attack

---

[1]    The Defendant police officers are Lieutenant Stephen Dodge, Sergeant Michael
Mayo, and Officers Daniel Book, Joseph Busso, Lance Coats, Joseph Mader, Mark
Seper, and William Wethington. Officer Jason Chambers was also named in the
complaint but later voluntarily dismissed.  ECF No. 173.

Truck ("BEAR"), but otherwise reversed this Court's decision and remanded the case

for entry of judgment on "all other claims."[2] *Molina v. City of St. Louis*, 59 F.4th 334

(8th Cir. 2023). Because the parties dispute whether the Eighth Circuit's decision

foreclosed Plaintiffs Molina and Vogel's municipal claims against the City (Count IV),

the Court granted the parties' request for the City to file the present renewed motion for

summary judgment on the issue. ECF No. 236. For the reasons set forth below, the

motion will be denied.

## BACKGROUND

### I.    Factual Record

The full factual summary of this matter can be found in this Court's prior

Memorandum and Order denying summary judgment in part and granting summary

judgment in part. ECF No. 201. Because this renewed motion for summary judgment

only addresses municipal liability for the First Amendment violations alleged by

Plaintiffs Molina and Vogel, the Court will limit the factual summary here to only those

facts relevant to this issue. Viewed in the light most favorable to Plaintiffs for purposes

of the present motion, the facts are as follows.

On August 19, 2015, Plaintiffs attended a protest in St. Louis following the

shooting of Mansur Ball-Bey during the execution of a search warrant. Molina and

Vogel, both lawyers, attended the protest as legal observers and wore neon green hats

---

[2]    Although the Eighth Circuit directed entry of judgment on "all other claims,"
Plaintiff's municipal liability claims were never before it on interlocutory appeal and
could not have been unless the Eighth Circuit found that they were "inextricably
intertwined" with qualified immunity, which it did not. *See Webb v. City of Maplewood*,
889 F.3d 483, 488 (8th Cir. 2018).

bearing the language "National Lawyers Guild Legal Observer" to designate themselves as such.

Following multiple dispersal orders from the police, Plaintiffs fled the protest to Molina's property on Euclid after an SLMPD BEAR deployed tear gas to their location on the order of Defendant Dodge.  Plaintiffs were standing on the sidewalk in front of Molina's house on Euclid, which Molina described as a safe meeting place away from the protest.  ECF No. 171-1 at 25.  Vogel testified that there were "maybe between five to ten" other people on Euclid near them at the time.  ECF No. 171-5 at 83.  The record contains no evidence of prior protest activity at this location.

Molina observed a police helicopter hovering overhead and speculated that those inside could see Molina's and Vogel's neon green hats and were communicating with officers by radio.  ECF No. 171-1 at 25, 35.  Defendant Mader generally confirmed that police helicopters have the ability to give updates on where people are located.  ECF No. 171-15 at 25.  Defendant Book also knew that legal observers are "the ones with the yellow hats."  ECF No. 171-18 at 12.  Defendant Dodge knew that individuals wearing green hats were legal observers, and he recalled seeing some that day.  ECF No. 171-6 at 16.  Defendant Dodge was the commander in charge of the helicopter at the time (ECF No. 171-18 at 11) and was the commanding officer who gave the order for the BEAR's patrol down Euclid (ECF No. 171-6 at 16).

Seeing the BEAR approaching and canisters flying toward other people on Euclid, the small group at Molina's property sought cover in the gangway between Molina's house and a neighboring house.  Plaintiffs allege that chemical weapons were deployed

3

directly at them in the space between the houses.  Though neither Vogel nor Molina actually saw canisters released from the BEAR as they were attempting to flee from it, Vogel noticed "the smell of [tear gas]" and said "the sound that it makes when it comes out started hitting and we had a fog, a cloud of smoke coming up at that point."  ECF No. 171-5 at 93.  Vogel recovered one of the canisters from the street.

The next day, Officer Nicholas Manasco (not a party) was tasked with writing a report of the day's events.  He met with the officers involved and wrote an After Action Report based on their verbal accounts.  ECF No. 183-5 at 36; 38.  There is no dispute that, as reflected in the report, Defendants Mayo (the sergeant in charge), Mader, Seper, Book, and Wethington were inside the BEAR; Defendants Busso and Coats were on the top; and Officer Chambers was driving.  ECF No. 183-3.  The report further states that Defendant Dodge ordered the officers to deploy chemical munitions and that, as the BEAR traveled south on Euclid, Defendants Busso, Book, and Mader deployed munitions on Euclid south of Page.  Several officers explained in deposition that munitions canisters can be released from one of many portholes of an armored vehicle either by hand or using a launcher.  A small window above each porthole allows an officer to see outside the vehicle, albeit with a limited view.

At the time of the protest, the City had in place a "Use of Force" policy which provided that "Officers will use the least amount of force reasonably necessary to accomplish their lawful objectives while safeguarding their own lives and the lives of others."  ECF No. 171-21 at 1, ¶ 6.  The policy also contained a section titled "Deployment of Chemical Agents for Crowd Dispersal" ("Chemical Agents Policy") that

4

explicitly stated that "chemical agents will not be used for the purpose of frightening or punishing individuals for exercising their constitutional rights." *Id*. at XIII-1.  It further instructed that chemical agents should not be used to disperse groups engaging in non-criminal activity unless a warning is issued, individuals are given the chance to heed it, the impact on compliant individuals is minimized, and safe egress is announced and ensured.  *Id.* at XIII-1 to XIII-2.  The City adopted this policy in March 2015 – at least four months before the events at issue here – in connection with a settlement agreement in another civil rights case in this district: *Templeton, et al. v. Dotson, et al.*, Case No. 4:14-cv-2019 CEJ.  *See Ahmad v. City of St. Louis*, 4:17 CV 2455 CDP, 2017 WL 5478410, at *7 (E.D. Mo. Nov. 15, 2017).

## II.    Procedural History

In August 2017, Plaintiffs filed their initial complaint against St. Clair County, St. Louis City, and eleven John Doe police officers asserting claims of retaliation in violation of the First Amendment (Count I) and excessive force in violation of the Fourth Amendment (Count II).  The municipal defendants moved to dismiss for failure to state a claim for municipal liability under *Monell*.[3]  ECF No. 11, 17.  The Court granted the motions, reasoning that Plaintiffs did not plead sufficient facts indicating a failure to train and supervise or an unconstitutional policy.  ECF No. 33.

In May 2018, Plaintiffs filed an amended complaint against the City and asserting claims against the individual officers for First Amendment retaliation (Count

---

[3]      *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

I), Fourth Amendment excessive force (Count II), and failure to intervene (Count III), and against the City for municipal liability under *Monell* (Count IV).  ECF No. 36. After lengthy and contested discovery, the Court denied Defendants' motion for summary judgment on Count I and granted it on Counts II and III.  ECF No. 201.  The Court also denied Defendants' motion for summary judgment on Count IV as it related to Plaintiffs' First Amendment claims on Count I, but granted summary judgment on Count IV as it related to Plaintiffs' Fourth Amendment claims on Counts II and III.  *Id.* Defendants filed notice of their interlocutory appeal April 8, 2021.

On February 2, 2023, the Eighth Circuit issued its opinion and preliminary judgment, affirming this Court's denial of summary judgment on Plaintiff Groce's First Amendment retaliation claim against the individual officers in the BEAR and reversing this Court's denial of summary judgment on Plaintiff Groce's First Amendment retaliation claim against Lieutenant Dodge as well as Plaintiffs Molina and Vogel's First Amendment retaliation claims against all Defendants.

In reversing Plaintiff's Molina and Vogel's First Amendment retaliation claims against the individual Defendants, the Eighth Circuit determined in Part B of its opinion that the individual Defendants were entitled to qualified immunity because the right to observe and record police-citizen interactions was not clearly established in 2015.[4]  The

---

[4]    In a separate opinion, Judge Benton noted that the panel opinion's holding "violates this circuit's cardinal rule…that one panel is bound by the decision of a prior panel." *Molina v. City of St. Louis*, 59 F.4th 334, 345 (8th Cir. 2023) (Benton, J., dissenting in part and concurring in part) (quoting *Marder v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc)).  The dissent argued that the panel was bound by *Chestnut v. Wallace*, 947 F.3d 1085 (8th Cir. 2020), and *Walker v. City of Pine Bluff*, 414 F.3d 989

Eighth Circuit reasoned that the Supreme Court's decision in *Colten v. Kentucky*[5]

suggested that observing police conduct was not expressive and that the Eighth

Circuit's decisions in *Walker v. City of Pine Bluff* and *Chestnut v. Wallace* were merely

Fourth Amendment cases that could not establish a First Amendment right to observe

police officers.  *Molina*, 59 F.4th at 340.

The Eighth Circuit also rejected three alternate theories argued by Plaintiffs in

Part C of its opinion: (1) a "peaceful assembly" theory; (2) an "expressive behavior"

theory based on the bright green hats that Plaintiffs wore; and (3) a "mistaken for

protestors" theory.  First, the Eighth Circuit rejected Plaintiffs' peaceful assembly

theory because Plaintiffs could not show that their assembly caused the individual

Defendants to use the tear gas against them.  *Id.* at 341.  The Eighth Circuit further held

that "[t]he only reasonable inference to draw from these facts is that the officers were

'merely carrying out their duty as they underst[ood] it.'"  *Id.* (citing *Mitchell v.

Kirchmeier*, 28 F.4th 888, 897 (8th Cir. 2022).  From this, the Eighth Circuit concluded:

> It makes no difference that the officers may have made a mistake.  As we
> have explained, retaliatory animus cannot be the driving force whenever
> officers act based on their "understanding—however mistaken—of [their]
> official duties," even if the mistake turns out to be 'unreasonable. *Id.* at 896.

---

(8th Cir. 2005), which "found a clearly established First Amendment Right to observe
police officers that existed before the events precipitating this case."  *Id.* (citing *Chestnut*,
947 F.3d at 1090; *Walker*, 414 F.3d at 993).  The panel opinion's position was also
contrary to the position taken by the First, Third, Seventh, Ninth, and Eleventh Circuits.
*Id.* (citing *Glik v. Cunnife*, 655 F.3d 78, 81 (1st Cir. 2011); *Fields v. City of Philadelphia*,
862 F.3d 353, 359 (3d Cir. 2017); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 597 (7th Cir.
2012); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *Smith v. City of
Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000)).

[5]    *Colten v. Kentucky*, 407 U.S. 104 (1972).

So even if the officers "unreasonably believed" that the group was refusing to comply with their earlier directions to disperse, their official orders—not retaliatory animus—caused them to use the tear gas.  *Id.* (citing *Barbeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010)).

*Id.* at 341.

Second, the Eighth Circuit rejected Plaintiff's "expressive behavior" theory because Plaintiffs' bright green hats did not convey an "obvious pro-protest message." *Id.* at 342.  At a minimum, any pro-protest message was not "beyond debate," which meant that this theory, could not overcome qualified immunity.  *Id.*

Finally, the Eighth Circuit rejected Plaintiffs' "mistaken for protestors" theory despite support from the Supreme Court's decision in *Heffernan v. City of Patterson*, 578 U.S. 266 (2016), because *Heffernan* was decided months after the events in this case, so "no controlling authority or robust consensus of cases of persuasive authority clearly established the right before early 2016—too late for it to matter here."  *Id.* at 343 (cleaned up).

Plaintiffs filed a petition for rehearing by the Eighth Circuit en banc, which was denied over the dissent of Judges Colloton and Benton.[6]  In their dissent, Judges Colloton and Benton argued that rehearing was warranted to consider whether "intentional police retaliation against citizens identifying themselves as legal observers during a public protest violated a clearly established right of the legal observers." *Molina v. City of St. Louis*, 65 F.4th 994, (8th Cir. 2023) (order denying rehearing en

---

[6]    Judges Smith and Kelly also would have granted the petition for rehearing en banc.

banc).  "As the panel dissent pointed out, this court already concluded that police officers were on notice of a clearly established right under the First Amendment to observe police conduct *as of February 2015*—before the incident in this case.  *Id.* (citing *Chestnut*, 947 F.3d at 1090-91; *Walker*, 414 F.3d at 989) (emphasis in original). The dissent also argued that rehearing was warranted to reconsider "the panel opinion's conclusion that attending a protest while wearing a bright-colored hat emblazoned with 'National Lawyers Guild Legal Observer' rather than 'Protestor' is not clearly protected expression." *Id.* at 995.[7]

Plaintiffs subsequently filed a petition for a writ of certiorari with the Supreme Court, which was also denied.  On February 23, 2024, this Court ordered the parties to file a joint status report advising the Court of any outstanding matters in the case and how the parties wished to proceed as to those matters.  The parties requested leave for the City to file a renewed motion for summary judgment on Plaintiffs Molina and Vogel's claims for municipal liability for the alleged First Amendment violations before the Court scheduled a trial in this matter, which the Court granted.  The Court then entered judgment on behalf of Defendants Daniel Book, Joseph Busso, Lance Coats, Stephen Dodge, Joseph Mader, Michael Mayo, Mark Seper, and William Wethington on Plaintiffs Molina and Vogel's claims, and judgment on behalf of Defendant Stephen Dodge on Plaintiff Groce's claims in accordance with the Eighth

---

[7]    The dissent further noted that conflicts between the panel opinion and circuit precedent were "particularly regrettable because the issues under discussion were not even raised by the police officers in this case." *Id*. at 995.  Instead, the panel raised these new issues in an order for supplemental briefing. *Id.* at 996.

Circuit's remand order.  ECF No. 237.  The City's renewed motion for summary

judgment is now fully briefed and ripe for review.

## ARGUMENTS OF THE PARTIES

The City argues that it is entitled to summary judgment because: (1) the Eighth

Circuit held that the individual Defendants did not violate Plaintiffs Molina and Vogel's

First Amendment rights and therefore their municipal liability claims necessarily fail;

(2) Plaintiffs Molina and Vogel's municipal claims necessarily fail in the absence of

clearly established law; and (3) the record here, including new evidence not previously

presented to the Court on summary judgment, cannot establish that the City was

deliberately indifferent to a widespread pattern of constitutional violations and that such

deliberate indifference actually caused a violation of Molina and Vogel's First

Amendment rights.

In response, Plaintiffs Molina and Vogel argue that their municipal liability

claims against the City should not be dismissed because: (1) the City misinterprets and

misstates the Eighth Circuit's decision, which only held that Plaintiffs Molina and

Vogel's First Amendment rights were not clearly established at the time of the incident

and not that there was no First Amendment right for Plaintiffs to observe and record

police-citizen interactions; (2) deliberate indifference is not required to establish

municipal liability based on an unconstitutional custom, and the City oversimplifies and

conflates the municipal liability standards; and (3) the material facts related to

municipal liability in this case remain in dispute regardless of any new evidence

provided by the City.

In reply, the City reiterates its arguments from its motion for summary judgment and argues that Plaintiffs' efforts to distinguish claims asserting tacit authorization of an unconstitutional custom from claims asserting deliberate indifference or a failure to train is without merit. Furthermore, the City argues that the Eighth Circuit's opinion provides no basis upon which to deny summary judgment, particularly where it "impels the entry of judgment in favor of the City." ECF No. 247 at 1.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Smith v. Lisenbe*, 73 F.4th 596, 600 (8th Cir. 2023). "[T]he burden of demonstrating that there are no genuine issues of material fact rests on the moving party," and the court must view "the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).

In opposing summary judgment, a plaintiff may not "simply point to allegations" in the complaint, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *In re Citizens Loan and Sav. Co.*, 621 F.2d 911, 913 (8th Cir. 1980). Rather, the plaintiff "must identify and provide evidence of specific facts creating a triable controversy." *Howard*, 363 F.3d at 800 (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v.*

*City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

## DISCUSSION

### I.   Municipal Liability

Liability for an officer's constitutional violation may attach to a municipality when it results from (1) an official municipal policy, (2) an unofficial custom, or (3) a failure to train or supervise.  *Poemoceah v. Morton Cnty.*, 117 F.4th 1049, 1057 (8th Cir. 2024) (citing *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013)).

Where a municipal claim depends upon the existence of a custom, "liability may be established through proof that the alleged misconduct was so pervasive among the non-policymaking employees of the municipality as to constitute a 'custom or usage' with the force of law."  *McGautha v. Jackson Cnty., Mo., Collections Dep't*, 36 F.3d 53, 56 (8th Cir. 1994) (citation omitted).  A custom or usage which is sufficient to constitute official policy is demonstrated by:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cnty.*, 150 F.3d 873, 880 (8th Cir. 1998) (cleaned up).  Multiple

incidents of similar police misconduct may show evidence of a custom "if some evidence indicates that the incidents occurred over a course of time sufficiently long enough to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by the policymaking officials." *Johnson v. Douglas Cnty. Med. Dep't.*, 725 F.3d 825, 829 (8th Cir. 2013).

A municipality cannot be held liable, however, where there is no underlying constitutional violation. *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016) ("In order for municipal liability to attach, individual liability must first be found on an underlying substantive claim.").

## II.    The Eighth Circuit's Decision

The City argues that the Eighth Circuit foreclosed the possibility of municipal liability against it by holding that there was no violation of Plaintiffs Molina and Vogel's First Amendment rights.  By contrast, Plaintiffs argue that the Eighth Circuit's decision merely held that their First Amendment right to observe and record police-citizen interactions was not clearly established at the time of the incident at issue in this case, and therefore, the City may still be liable for tacitly authorizing an unconstitutional custom.

The Court finds Plaintiffs' argument more persuasive.  The Eighth Circuit did not address the constitutional merit of Plaintiffs' argument that the individual officers in the BEAR retaliated against them for observing and recording police-citizen interactions.  Instead, the Eighth Circuit only found that this theory could not overcome qualified immunity because any right to observe and record police was not clearly

13

established in 2015.  As such, the Eighth Circuit did not actually reach the issue the

City claims is preclusive.

To decide whether this Court should have granted summary judgment on the

motion seeking qualified immunity, the Eighth Circuit considered two questions: (1)

whether the officers violated a constitutional right; and (2) whether the right was clearly

established at the time of the incident.  *Molina*, 59 F.4th at 337-38 (citing *Morgan v.

Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc)).[8]

To prevail on their First Amendment retaliation claim, Plaintiffs needed to

establish that: (1) they engaged in protected First Amendment activity; (2) the officers

took an adverse action that would chill a person of ordinary firmness from continuing in

the protected activity; and (3) the First Amendment activity was a but-for cause of the

injury.  *Id*. (internal citations and quotations omitted).  Furthermore, to overcome

qualified immunity, Plaintiffs also needed to show that "it would have been sufficiently

clear [to] every reasonable official…that what [they were] doing violate[d] the First

Amendment."  *Id.*

On the one hand, the Eighth Circuit noted that some Supreme Court precedent

seemed to "suggest that observing police conduct is not expressive."  *Id.* at 339.  On the

---

[8]    The Eighth Circuit can choose to answer these questions in either order and may
resolve an appeal under the clearly established prong of the qualified immunity analysis
alone.  *See Irish v. McNamara*, 108 F.4th 715, 718 (8th Cir. 2024); *Gardner v. Bd. of
Police Comm'rs*, 641 F.3d 947, 950 (8th Cir. 2011); *Lombardo v. City of St. Louis*, 38
F.4th 684, 690 (8th Cir. 2022) (recognizing the Supreme Court's caution that courts
should think hard before deciding a constitutional question that need not be resolved)
(citing *Camreta v. Greene*, 563 U.S. 692, 707 (2011)).

14

other hand, the Eighth Circuit acknowledged that it was "not beyond the possibility that a First Amendment right to observe police exists." [9]  *Id.* at 340 n.2.  Without deciding the issue, the Eighth Circuit held only that "observing and recording police-citizen interactions was not a *clearly established* First Amendment right in 2015," and therefore the individual officers were entitled to qualified immunity.  *Id.* at 338 (emphasis in original).

The City nevertheless argues that the Eighth Circuit "plainly held" that there was no underlying First Amendment violation because the Defendant officers were not motivated by retaliatory animus.  *Id*. at 341.  However, the City reads the Eighth Circuit's decision too broadly.  The Eighth Circuit only applied its analysis on retaliatory animus to Plaintiffs' alternate "peaceful assembly" theory in Part C of the decision and not to any of Plaintiffs' additional theories, including the right to observe and record theory separately and singularly addressed in Part B of the decision.  The Eighth Circuit's finding that there was no underlying constitutional violation on Plaintiffs' alternate "peaceful assembly" theory does not imply, let alone explicitly determine, that the Eighth Circuit also held that there was no underlying violation of

---

[9]   Indeed, Judge Benton explicitly acknowledged that, under the Eighth Circuit's prior precedent, Plaintiffs Molina and Vogel were engaged in protected First Amendment activity.  *Molina*, 59 F.4th at 348 (Benton, J., dissenting in part and concurring in part) (citing *Chestnut*, 947 F.3d at 1085 and *Walker*, 414 F.3d at 989.  *See also Molina*, 65 F.4th at 994-95 (Colloton, J. and Benton, J. dissenting) ("Rehearing is warranted to consider whether intentional police retaliation against citizens identifying themselves as legal observers during a public protest violated a clearly established right of the legal observers.  As the panel dissent pointed out, this court already concluded that police officers were on notice of a clearly established right under the First Amendment to observe police conduct *as of February 2015*—before the incident in this case.").

Plaintiffs' constitutional right to observe and record the police.

This Court previously held, and continues to hold, that chasing after and deploying tear gas at legal observers and peaceful protestors who complied with a dispersal order and retreated to a sidewalk far away from an earlier assembly violates the First Amendment. Viewed in the light most favorable to Plaintiffs, the evidence permits an inference that the individual Defendants recognized Plaintiffs as legal observers or, in the very least a jury could reasonably infer that they believed that the individuals at Plaintiff Molina's house were protestors and retaliated against them while Plaintiffs were peaceably standing on the sidewalk, 183 yards away from and 12 minutes after the protest scene at Page Avenue. *See also Molina* 65 F.4th at 995 (noting that every circuit court to have considered the question has held that a person has the right to record police activity in public and recognizing that if the constitution protects one who records police activity, then it must also protect one who merely observes it). The Eighth Circuit did not overturn or disturb this holding. Because the Court finds that Plaintiffs have presented facts which, viewed in the light most favorable to them, demonstrate that they were deprived of their First Amendment rights, Plaintiffs' *Monell* claims survive despite the individual officers' qualified immunity from suit. *See Webb v. City of Maplewood*, 889 F.3d 483, 486 (8th Cir. 2018) ("We have long held…that a municipality may be held liable for its unconstitutional policy or custom even when no official has been found personally liable for his conduct under the policy or custom.").

III.    **Municipal Liability When a Constitutional Right is not Clearly Established**

The City argues that it cannot be liable for any violation of a constitutional right that was not clearly established.  According to the City, because the Eighth Circuit held that Plaintiffs' First Amendment rights were not clearly established in 2015, the City could not have been deliberately indifferent to any violations of those rights.  Plaintiffs argue that the City can still be held liable for tacitly authorizing an unconstitutional custom because failing to hold municipalities accountable for constitutional violations solely because a constitutional right was not clearly established at the time of an incident would de facto grant municipalities qualified immunity.  While the Eighth Circuit has not always been clear in discussing the relationship between individual and municipal liability, the Court finds Plaintiffs' arguments more persuasive and consistent with prior Eighth Circuit precedent.[10]

The City relies principally on *Lombardo v. City of St. Louis*, 38 F.4th 684 (8th Cir. 2022) and *Graham v. Barnette*, 5 F.4th 872 (8th Cir. 2021).  In both *Lombardo* and *Graham*, the Eighth Circuit held that "[w]here the municipality has not directly inflicted an injury…'rigorous standards of culpability and causation must be applied' and a showing of deliberate indifference is required." *Lombardo*, 38 F.4th at 692 (citation omitted); *see also Graham*, 5 F.4th at 891.

Furthermore, "a deliberate indifference claim fails in [t]he absence of clearly

---

[10]    *See Webb*, 889 F.3d at 468 ("We have not always been as clear as we could have in discussing the relationship between individual and municipal liability.").

established constitutional rights, so-called clear constitutional guideposts for municipalities in the area." *Lombardo*, 38 F.4th at 692 (internal quotations omitted). This "lack of clarity in the law precludes a finding that the municipality had an unconstitutional policy at all, because its policymakers cannot properly be said to have exhibited a policy of *deliberate* indifference to constitutional rights that were not clearly established." *Id*. (emphasis in original); *see also Graham*, 5 F.4th at 891-92 ("In other words, because the right at issue was not clearly established, [the plaintiff] cannot meet the demand that deliberate indifference in fact be deliberate.") (cleaned up).

*Lombardo* and *Graham*, however, address claims of liability based upon municipal policy and a failure to train, not based on custom. Both *Lombardo* and *Graham* rely on *Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007) (en banc). *Id.* at 393-94 (finding that "a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established."). In *Szabla*, however, the Eighth Circuit explicitly stated that "[t]he separate doctrine providing for municipal liability in a case of widespread unconstitutional practices that constitute a 'custom' or usage with the force of law'" was not at issue in the case. *Id*. at 392 n.3 (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 796 (1997); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).[11]

---

[11]    Indeed, *Szabla* itself applied the Supreme Court's holding from *City of Canton v. Harris*, 489 U.S. 378 (1989), which stated that in cases involving allegations of constitutional violations resulting from a municipality's failure to adequately train its police force, liability attaches "'where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policy makers." *Id.* at 389 (1989) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)

Plaintiffs argue that the claims in this case are distinguishable from *Lombardo* and *Graham* precisely because the City tacitly authorized a custom of unconstitutional conduct.[12] They rely principally on *Webb v. City of Maplewood* for their argument that an unconstitutional custom can be found—and a city held liable—even in cases where "officials all enjoy personal immunity from suit, [because] it hardly follows that they did not engage in any unlawful acts or that the City is thereby immune as well." *Webb* 889 F.3d at 486. Even absent individual liability, "[w]hether the challenged acts occurred, whether they were unlawful, and whether the City is liable for them under [*Monell*] would still be open questions." *Id.* at 486 (citing *Owen v. City of Independence*, 445 U.S. 622, 657 (1980)). The Eighth Circuit has "long held for that reason that a municipality may be held liable for its unconstitutional policy or custom even when no official has been found personally liable for his conduct under the policy or custom." *Id.* at 486 (citation omitted).

The City's and Plaintiffs' arguments address two separate concerns in the case law stemming from *Monell*: (1) ensuring that a finding of municipal liability does not

_____

(plurality opinion). In *Canton*, the Supreme Court thus held that inadequate training "may serve as the basis of § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact." *Id.* at 388. The Supreme Court, like the Eighth Circuit in *Szabla*, also explicitly stated that it was not considering the separate and distinct basis for a city's liability based on municipal custom. *Id.* at 386 n.5.

[12]    Plaintiffs also argue that the Court should apply a different standard in this case because they raise First Amendment claims; however, Plaintiffs do not cite any case law to support this argument. Furthermore, Plaintiffs themselves rely on numerous § 1983 municipal liability cases concerning constitutional rights other than the First Amendment. The Court has not found any deviating standard in cases involving the First Amendment.

de facto create *respondeat superior* liability; and (2) ensuring that a finding of qualified

immunity for an individual does not create de facto immunity for the municipality.

*Compare City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) ("[S]ome

limitation must be placed on establishing municipal liability through polices that are not

themselves unconstitutional, or the test set out in *Monell* [foreclosing *respondeat*

*superior* liability] will become a dead letter"), *with Owen*, 445 U.S. at 650-51 (rejecting

a construction of § 1983 that would "accord municipalities a qualified immunity for

their good faith constitutional violations" because it would leave victims of municipal

malfeasance remediless if the city were allowed to assert a good-faith defense like

government officials).

The City has not cited to any case holding that a right must be clearly established

before a plaintiff can demonstrate municipal liability based on a custom.[13]  On the

contrary, the Eighth Circuit's test for unconstitutional custom does not require

deliberate indifference to a constitutional right.  Rather, the custom test requires

---

[13]    As discussed above, both cases cited by the City, *Graham and Lombardo*, did not
address custom and relied on the Eighth Circuit's holding in *Szabla*, which was premised
on the fact that the municipality did not have a history of police officers engaging in
unreasonable conduct such that the need for additional training or supervision was plain.
*Szabla*, 486 F.3d at 392-93.  The City's citation to *Hollingsworth v. City of St. Ann*, 800
F.3d 985, 992 (8th Cir. 2015) is similarly distinguishable.  *Id.* (rejecting the plaintiff's
municipal liability claim based on municipal policy after finding her asserted
constitutional right was not clearly established and explicitly noting that there was no
evidence of a pattern of violations).  Here, by contrast, Plaintiffs cite approximately 15
other incidents between 2012 and 2017 when SLMPD officers deployed tear gas at non-
violent protestors to establish that the City's officials knew about a widespread pattern of
retaliatory use of chemical munitions to chill protected speech and that such officials
were deliberately indifferent to such conduct or tacitly or explicitly authorized it.

deliberate indifference to or tacit authorization of *unconstitutional misconduct* by municipal employees. *Ware*, 150 F.3d at 880. Indeed, in other cases where individual officers were found to have qualified immunity, the Eighth Circuit has not adopted the City's proposed standard and test, but instead has addressed the merits of the claim. *See Cartia v. Beeman*, 122 F,4th 1036, 1045 (8th Cir. 2024) (applying the Eighth Circuit's typical custom test and analysis even after finding that the officers at issue did not violate a clearly established right); *see also Leonard v. St. Charles Cnty. Police Dep't.*, 59 F.4th 355 (8th Cir. 2023) (same). Under the City's analysis, the finding that the law was not clearly established would make any further analysis unnecessary.

In § 1983 cases based upon municipal custom deliberate indifference is ordinarily shown by a pattern of constitutional violations. *Perkins v. Hasting*, 915, F.3d 512, 521 (8th Cir. 2019) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). Furthermore, "[e]vidence that a police department has failed to investigate previous incidents similar to the incident in question may support a finding that a municipal custom exists, and that such a custom encourages or allows officers to use excessive force without concern for punishment." *Perkins*, 915 F.3d at 521 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999); *see also Perry v. St. Louis Cnty.,* No. 4:22-cv-140-MTS, 2024 WL 4527198, at *17 (E.D. Mo. Oct. 18, 2024) (same).

As the Court has previously addressed, Plaintiffs cite approximately 15 other incidents between 2012 and 2017 when SLMPD officers deployed tear gas at non-violent protestors to establish that the City's officials knew about but failed to act on a

widespread pattern of retaliatory use of chemical munitions to chill protected speech

and that such a custom encouraged or authorized officials to engage in such conduct.

Plaintiffs have submitted more than a dozen sworn declarations and excerpts of

deposition testimony by witnesses, including some legal observers, describing allegedly

retaliatory and excessive chemical munition deployments on several occasions before

and after August 19, 2015. [14]  ECF 183, Ex. 9 through 23.  Plaintiffs have also

submitted internal SLMPD emails in an effort to depict a hostile culture and establish

that supervisory staff knew of the problem and failed to conduct reviews or take other

appropriate action.  ECF No. 199-2 at 82 (email from Sgt. Rossomanno, dated August

27, 2015, stating "the DOJ is not your friend in this.  I'll try to send you a report from

one of our protests in a bit so you can see how we write the narrative."); ECF No. 199-2

at 40 (email from Sgt. Rossomanno, dated November 12, 2014, stating that superiors'

jobs are to protect the troops from the protestors and to protect our troops from

themselves"); ECF No. 199-2 at 75 (after a protest in December 2014, an officer's

email stating, "[W]e were very lucky that the crowd was a bunch of cowards or we

would not have been able to deter them.").

     Plaintiffs also rely on evidence from *Ahmad v. City of St. Louis* where the trial

court reviewed police officers' conduct and the City's practices in the fall of 2017 and

found sufficient evidence of unconstitutional conduct and underlying customs to

---

[14]    Post-incident evidence is admissible to prove the existence of a municipality's customs at the time in question.  *See Whitt v. City of St. Louis*, 4:18-CV-1294 RLW, 2020 WL 7122615, at *7 (E.D. Mo. Dec. 4, 2020) (collecting cases).

warrant preliminary injunctive relief. *Ahmad*, 2017 WL 5478410, at *3 ("Sachs testified that he could not say 'exactly how far would be enough to comply with this, or any dispersal order...A tactical vehicle eventually deployed chemical munitions at the group."); *Id.* at 15 ("plaintiffs presented testimony...of witnesses who reasonably thought they had complied with the dispersal order by moving further down the street because the order did not indicate how far they should disperse"). As the Court previously found, the facts discussed at length in *Ahmad* confirm Plaintiffs' evidence before and after August 2015 and are consistent with other evidence in the present record.[15]

        Furthermore, viewed in the light most favorable to Plaintiffs, the testimony of the Defendant officers in this case further supports Plaintiffs' position that the City had an unconstitutional custom of deploying chemical munitions against people engaged in expressive activity and perceived to be expressing an anti-law enforcement viewpoint in violation of the First Amendment, despite the City's official policy and purported training of its officers. Defendant Book testified that he had worked more protests than he could count, but he was not familiar with the City's official policy regarding chemical munitions (adopted after *Templeton*) or the *Ahmad* preliminary injunction order, and he had "no idea" how far a group would need to go in order to comply with a

---

[15]     The Court previously considered certain witness statements from the *Ahmad* case spread upon the record after previously denying Defendants' motion to strike these statements, among others. ECF No. 183, Exhibits 7, 8 ,11, 15, and 25. Evidence from events after 2015 is relevant to the determination whether the City had a particular pattern, practice, or custom at the time of the alleged violation. *See, Whitt*, 2020 WL 7122615, at *7.

dispersal order.  ECF 171-18 at 26.  Similarly, Defendant Seper similarly could not articulate how far a person would need to go to be dispersed and disassociated from such a crowd.  ECF 171-16 at 18-19.

Plaintiffs also assert that the City does not conduct meaningful incident reviews of the uses of chemical munitions against protestors from a constitutional standpoint. ECF No. 183-27 (discovery response confirming that the City does not generate any critical incident reviews regarding protests).  In the after-action meeting following the August 19, 2015, protest, the only take-away that Defendant Dodge recalled for future improvement was that the police line was upwind of the protestors such that smoke and gas blew back on the officers.  ECF 171-6 at 22.  When asked in deposition if he would do anything differently, he said they should have arrested more people at the beginning. *Id*. at 30.

Here, Plaintiffs have alleged and presented evidence that creates a question of fact regarding whether the City tacitly approved an unconstitutional custom, that is, that Defendant sanctioned a continuing, widespread, and consistent pattern of unconstitutional misconduct, and that pattern of sanctioned unconstitutional misconduct led to Plaintiffs' injuries.  To hold that the City cannot, as a matter of law, be liable for unconstitutional custom merely because the individual officers at issue were entitled to qualified immunity would risk granting the City de facto qualified immunity.  Such a reading would be fundamentally inconsistent with *Monell* and with Eighth Circuit precedent.  *See Owen*, 445 U.S. at 651; *Webb*, 889 F.3d at 487-88 (recognizing the need to provide "victims of municipal malfeasance" with a remedy, especially since the

officials responsible for the injury may enjoy personal immunity from suit) (internal citation omitted).

## IV.    Sufficiency of Evidence

The City argues that Plaintiff cannot set forth sufficient evidence to establish their claim for municipal liability.  Specifically, the City asserts that new evidence not previously disclosed in the record demonstrates that it could not have been deliberately indifferent in failing to train or have otherwise had a custom of allowing officers to violate citizens' First Amendment rights.  This new evidence consists of two additional depositions, which were already in the record in full or in part, American Civil Liberties Union and other training materials allegedly used to train officers to not violate protestors' First Amendment rights, and excerpts of emails and an After Action Report. ECF No. 240, Ex. 1-8.

Even assuming that all of the City's new evidence is admissible, which Plaintiffs challenge, the City's "new" assertions of fact and supporting documents do not foreclose the factual dispute over Plaintiffs' claim of an unconstitutional custom of allowing officers to violate citizens' First Amendment rights and unlawfully deploying chemical munitions.  A municipality can have a facially constitutional policy and a custom of not following that policy.  *See McMillian*, 520 U.S. at 796 (1997) (quoting *Praprotnik*, 485 U.S. at 127) ("Egregious attempts by local governments to insulate themselves from liability for unconstitutional policies are precluded by allowing plaintiffs to prove that a widespread practice has been established by custom or usage with the force of law") (cleaned up); *Brewington v. Keener*, 902 F.3d 796, 801-03 (8th

25

Cir. 2018) (analyzing liability for an unconstitutional custom where a policy was facially constitutional); *Johnson*, 725 F.3d at 828-29 (same).  Furthermore, as the Court previously found, Plaintiffs have provided testimony from witnesses to, or victims of, alleged retaliatory and excessive chemical munition deployment against protestors on approximately 15 occasions between 2012 and 2017, including several which occurred before August 19, 2015.  Plaintiffs have also provided evidence that supervisory staff knew about these incidents yet failed to conduct any meaningful reviews.  None of the information provided by the City resolves the disputes over these material facts at issue in this case.

As before, the Court recognizes that Plaintiffs' witness declarations are not dispositive as to the lawfulness of police actions in each instance and that *Ahmad* was decided on its specific facts.  But the existence of a municipal custom is a fact question for the jury.  *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).  Applying the Eighth Circuit's decision and viewing the totality of the evidence in the present record, including the new evidence presented by the City, in a light most favorable to Plaintiffs, the Court believes that a jury could still find that the City's customs and practices permitted officers to deploy chemical munitions in an indiscriminate and retaliatory manner in violation of citizens' First Amendment rights, that the City's officials were notified of unconstitutional misconduct and were deliberately indifferent to it or tacitly authorized it, and that the City's customs and practices were the moving force behind the deprivation of Plaintiffs' rights on August 19, 2015.  Because genuine issues of material fact must be resolved by a jury, the City is not entitled to summary judgment

on Count IV as it relates to Plaintiffs' First Amendment claims.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is

**DENIED**.  ECF No. 238.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 14th day of February, 2025